JONATHAN O. BULKLEY et al., as Copartners of the Firm of BULKLEY, DUNTON & COMPANY, Respondents, *v.* ALBERT SHAW et al., Appellants.

Argued May 25, 1942; decided October 15, 1942.

The following questions were certified:

"1. Is the agreement alleged in the complaint and upon which the action is founded void under the provisions of Personal Property Law, section 31, subdivision 2, as being a special promise to answer for the debt, default or miscarriage of another person?

" 2. Was the motion of the defendants-respondents to dismiss the complaint on the ground that the alleged agreement on which the action is founded is void under the provisions of the Statute of Frauds properly granted at Special Term? "

*William C. Scott, Barham R. Gary* and *Donald W. Smith,* for appellants. The promise alleged is clearly void under the Statute of Frauds. (*Richardson Press* v. *Albright,* 224 N. Y. 497; *Witschard* v. *Brody & Sons, Inc.,* 257 N. Y. 97; *Watson* v. *Quilter,* 220 App. Div. 663; 249 N. Y. 562; *Workman, Inc.,* v. *Lincoln,* 220 App. Div. 670; 250 N. Y. 518; *Diehl* v. *Garvin,* 165 Misc. Rep. 170; *Terminello* v. *Bleecker,* 155 Misc. Rep. 702; *Prudential I. W., Inc.,* v. *Colchester Realty Corp.,* 142 Misc. Rep. 724.) The promise alleged is a special promise to answer for the debt or default of another within the Statute of Frauds. (*Millard* v. *Steers,* 9 App. Div. 419; 158 N. Y. 741.) The presence of a new consideration moving to a beneficially interested promisor will not prevent operation of the Statute of Frauds. (*Richardson Press* v. *Albright,* 224 N. Y. 497; *Witschard* v. *Brody & Sons, Inc.,* 257 N. Y. 97; *Watson* v. *Quilter,* 220 App. Div. 663; 249 N. Y. 562; *Erie R. R. Co.* v. *Tompkins,* 204 U. S. 64.)

*Sherman Baldwin, Thomas F. Daly* and *Sidney S. Coggan* for respondents. The promise was not a promise to answer for the debt or default of another. (*Rosenkranz* v. *Schreiber Brewing Co.,* 287 N. Y. 322.) Even if the contract is held to be in effect a promise to answer for the debt of another, the Statute of Frauds has no application where, as here, there is an original promise based upon new consideration moving to a promisor who is beneficially interested. (*Rosenkranz* v. *Schreiber Brewing Co.,* 287 N. Y. 322; *Krider Building Material Co.* v. *Consolidated Indemnity & Ins. Co.,* 241 App. Div. 768; 265 N. Y. 611; *Davis* v. *Patrick,* 141 U. S. 479; *Gotham National Bank* v. *Sharood Co.,* 23 Fed. Rep. [2d], 567; *Wright* v. *Farmers' National Grain Corp.,* 74 Fed. Rep. [2d] 425; *Knight* v. *Kiser,* 271 Fed. Rep. 869; *Choate* v. *Hoogstraat,* 105 Fed. Rep. 713; *Wilson* v. *Harburney Oil Co.,* 89 Fed. Rep. [2d] 211; *Charles Broadway Rouss, Inc.,* v. *Cooper,* 69 Fed. Rep. [2d] 671; *White* v. *Rintoul,* 108 N. Y. 222; *Raabe* v. *Squier,* 148 N. Y. 81; *Schwoerer & Sons, Inc.,* v. *Stone,* 130 App. Div. 796; 200 N. Y. 560; *Meyers* v. *Arm,* 126 Conn. 579; *Garren* v. *Youngblood,* 207 N. C. 86; *Wahl* v. *Cunningham,* 320 Mo. 57.)

CONWAY, J.   This is an appeal from an order of the Appellate Division, First Department, which reversed an order of Special Term granting defendants' motion to dismiss the complaint, made under rule 107 of the Rules of Civil Practice, on the ground that the alleged agreement on which the action is founded is void under the provisions of the Statute of Frauds (Pers. Prop. Law, § 31, subd. 2; Cons. Laws, ch. 41), and directed that the motion be denied.

The Appellate Division has certified the following questions of law to be reviewed by this court:

" 1. Is the agreement alleged in the complaint and upon which the action is founded void under the provisions of Personal Property Law, section 31, subdivision 2, as being a special promise to answer for the debt, default or miscarriage of another person?

" 2. Was the motion of the defendants-respondents to dismiss the complaint on the ground that the alleged agreement on which the action is founded is void under the provisions of the Statute of Frauds properly granted at Special Term? "

The contract alleged is substantially as follows: In 1937 the defendants owned or controlled all or substantially all of the stock of the Review of Reviews Corporation (hereinafter referred to as Review) and directed and controlled its affairs.   Review published periodicals and magazines for the production of which large quantities of paper were required and large quantities of such paper were purchased by Review from the partnership of Bulkley, Dunton and Company (hereinafter referred to as Bulkley) during that year.   During June of 1937, Review acquired a publication known as " The Literary Digest " and commencing with July, 1937 published it under the name of " The Digest."   Shortly thereafter the defendants prepared a proposed budget which showed that Review would incur a deficit of $287,650 during the period from July 15, 1937 to January 15, 1938, in connection with the publication of " The Digest."   In July, 1937, the defendants advised Bulkley that they would place *Review in funds* to enable it to *finance the anticipated deficit* and requested Bulkley to continue to sell and deliver paper to Review and *to extend credit* not to exceed ninety days for a temporary period so as to enable the defendants to have more time to consider in what manner *to advance the necessary*

*sums to Review.* The defendants agreed that if Bulkley would continue to sell paper to Review and would agree to extend such credit, that *defendants would advance to Review* sufficient moneys for *it to pay* for said paper and *to meet any deficit* in its operations. Bulkley relied on those promises and agreed with defendants to continue to sell paper and to extend credit for the period and purpose requested. Despite the fact that Bulkley performed their portion of the agreement, the defendants failed and refused to advance to Review sufficient moneys to meet its operating expenses and Review did not have sufficient funds to meet them. As a result there was an unpaid balance of a considerable sum due Bulkley by November, 1937. Thereafter the successor corporation to Review was adjudicated a bankrupt, due to defendants failure to advance sufficient funds to meet the budget of 1937, and in August, 1940, Bulkley received a first and final dividend in a relatively small amount. This Bulkley applied in reduction of their claim for paper delivered to Review during 1937. The difference is the sum for which suit is brought.

The italicized portions of the contract as outlined above show quite clearly that the defendants never promised to pay Bulkley any sum. Their promise was to put Review in funds to meet its obligations. The credit to Review was sought in order to enable defendants to have more time to consider in what manner *to advance the necessary sums to Review.* The debt was always to be that of Review and never that of defendants. The agreement of defendants was to *answer* for the debt of another. If Review had had enough money to pay its debt to Bulkley or had paid it, Bulkley would not have been interested in whether or not the anticipated deficit of Review was financed. The fact is that Bulkley did not look to defendants for payment until the final dividend in the bankruptcy proceeding had been received in 1940, Bulkley's own conduct indicated that they considered Review the primary obligor and the defendants secondary or collateral obligors.

The case of *Richardson Press* v. *Albright* (224 N. Y. 497), is squarely in point. There there was a promise by the defendant, a large stockholder of the publisher, to pay a printer in cash for each issue of a periodical. This court said by POUND, J. (p. 500): "This letter contains no promise to pay plaintiff the debt of

Oceanic Publishing Company, but it contains a personal assurance that defendant will furnish Oceanic Publishing Company money to pay for each future issue," and again, " It later appeared that the money was to be forwarded by defendant to Mr. Davidson, the treasurer of the Oceanic Company."

A lengthy quotation from the *Richardson Press* case would carry this opinion to too great length but the following indicates how close the two cases are upon the facts: " But a promise may still be collateral, even though the new consideration moves to the promisor and is beneficial to him. The elements of a beneficial interest and new consideration must be present to take the case out of the statute, *but the inquiry remains whether the consideration is such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor. (White* v. *Rintoul, supra, at page 227.)* The implied consideration, as indicated by the subsequent dealings of the parties, is that plaintiff will continue to give credit primarily to Oceanic Publishing Company. Plaintiff was notified on March 14, 1912, that defendant admitted no responsibility as to its claim, and it is indisputable that plaintiff thereafter considered that the primary duty of payment remained with the original debtor. * * * *and turned to defendant only when the resources of the original debtor had been completely exhausted. The tenor of the entire transaction was that defendant purposed to help out the Oceanic Company and verbally promised to pay its debts.*

" * * * it (the promise) is regarded as original only when the party sought to be charged clearly becomes, within the intention of the parties, a principal debtor primarily liable." (Underscoring supplied.)

There can be no distinction between the *Richardson Press* case and the instant one because of the allegation in the present complaint that the defendants owned or controlled all or substantially all of the stock of Review. In the *Richardson Press* case, the defendant Albright was a substantial stockholder who was " in charge of the Oceanic Publishing Company " and would " run it hereafter." (p. 500.) The decision was not put upon the ground that the promisor's obligation " was at best remote," although that was mentioned, but on the ground that the promisor did not come

" under an independent duty of payment, irrespective of the liability of the principal debtor." (See also, *Harburg India Rubber Comb. Co.* v. *Martin*, [1902] 1 K. B. 778; *Davys* v. *Buswell* [1913], 2 K. B. 47; *Hurst Hardware Co.* v. *Goodman*, 68 W. Va. 462 [1910]; as to the promise of a large stockholder or debenture owner.)

Later in *Witschard* v. *Brody & Sons, Inc.* (257 N. Y. 97), we had the same question presented. There, defendant Buckley entered into a contract with the defendant Brody and Sons, Inc., to perform certain work on the latter's premises. Buckley, for necessary lumber supplied to the job, became indebted in a substantial sum to the defendant Westbury Lumber Co., Inc., which refused to make further deliveries of lumber necessary to complete the job, until paid. Mr. Ben Brody of the Brody firm said to officers of Westbury that if they " continued to deliver the balance of materials needed on that job he would guarantee payment of what had already been delivered, and what was to be delivered in the future." Westbury resumed deliveries to Buckley, who never paid for them. Westbury thereupon sought to recover from the Brody corporation, upon the promise made by that company, through Ben Brody, the amount due. This court used language peculiarly applicable here: " We think that the promise, made orally, was not enforceable under the statute of frauds, since, it was ' a special promise to answer for the debt, default or miscarriage of another person.' * * *. The fact that the Westbury Company, in continuing its deliveries to Buckley, at the request of the Brody Company, supplied a consideration for the latter's promise is not sufficient to make the statute inoperative. A promise to guarantee the account of another, like every promise, requires the support of a consideration paid or promised, in order that an enforceable contract may have been formed. To say that the payment of a consideration removes an oral contract of guarantee from the application of the statute is to say that the statute can never operate, for there is no such thing as a contract without consideration. (I Williston on Contracts, § 472.) Prof. WILLISTON says: ' The true test of the validity of a new oral promise should be: Is the new promisor a surety? ' (Id. § 475.) If, as between the promisor and the original debtor, the promissor is bound to pay, the debt is his own and not within the statute. ' *Contrariwise if as between*

*them the original debtor still ought to pay, the debt cannot be the promisor's own and he is undertaking to answer for the debt of another.'* (Id.) We find the same view expressed in *Mallory* v. *Gillett* (21 N. Y. 412, 415) and *Richardson Press* v. *Albright* (224 N. Y. 497, 502). In the former, COMSTOCK, Ch. J., said that ' the inquiry under that statute is, whether there be a debtor and a surety;' in the latter, POUND, J., said that the promise is original ' only when the party sought to be charged clearly becomes, within the intention of the parties, a principal debtor primarily liable. In this instance, the language of the promisor unmistakably indicates its intention to become a surety, for the very promise relied upon is that it ' would guarantee payment.' We have no doubt that the oral promise was within the statute and unenforceable." (pp. 98, 99.)

It is urged by the respondents that there is a distinction between that case and this because there was no identity of interest between the Brody corporation and Buckley and that the agreement was only to pay upon Buckley's default. Assuming that to be true, although it is difficult to find a greater interest in the subject-matter of a promise than one between a promisor and a debtor using materials to build upon property owned by the promisor for whom the debtor was working (an interest greater than in the instant case), the case still falls within the doctrine of Prof. WILLIS-TON, quoted with approval (*supra*) that " if as between them the original debtor still ought to pay, the debt cannot be the promisor's own and he is undertaking to answer for the debt of another." A reading of the complaint leaves no doubt that Review remained the one who " ought to pay " and the primary obligor. It is so pleaded.

It may be true that the repudiation of their promise by defendants will result in injury to Bulkley, as is urged upon us, but there is no allegation of fraud in the complaint. " A mere refusal to perform an oral agreement within the Statute, however, is not such fraud as will justify a court in disregarding the statute, even though it result in hardship to the plaintiff." (2 Williston on Contracts [1936], § 533-A.) That argument was equally applicable in the *Richardson Press* and *Witschard* cases (*supra*) and indeed, in any case where the promisee has performed.

The Federal cases cited by respondents are inapplicable. (*Erie Railroad Co.* v. *Tompkins*, 304 U. S. 64.)

*Rosenkranz* v. *Schreiber Brewing Co.* (287 N. Y. 322), is not in point. There, on the plaintiff's proof, there was no liability to him of any other person at the time defendant Schreiber Brewing Co. undertook to be his paymaster. In that view, there was no principal obligation to which the promise could have been collateral with the result that the promise was original, or so the jury could have found under the charge.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division. The questions certified should be answered in the affirmative.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, LEWIS and DESMOND, JJ., concur.

Ordered accordingly.