HAROLD COOPER, Appellant-Respondent, v DANIEL SCHUBE et al., Individually and as Trustees under the Last Will and Testament of MORRIS SCHUBE, et al., Respondents-Appellants.

First Department, April 8, 1982

APPEARANCES OF COUNSEL

*David L. Berkey* of counsel (*Jeffrey R. Zuckerman* with him on the brief; *Guggenheimer & Untermyer,* attorneys), for appellant-respondent.

*Lesley E. Goldberg* of counsel (*Trubin Sillcocks Edelman & Knapp,* attorneys), for respondents-appellants.

OPINION OF THE COURT

Ross, J. P.

Plaintiff is the tenant and occupant of the third floor apartment in the six-story class A multiple dwelling located at 19 East 73rd Street. He entered into a 38-month lease for this apartment on June 30, 1977. The individual defendants, Schube and Koozman, are the trustees under the last will and testament of Morris Schube, who was the sole shareholder of a corporation which owned this building. After the elder Schube's death, in October, 1977, this building was conveyed to the corporate defendant, 19 East 73rd Street Owners Corporation. Following this conveyance, the trustees were of the opinion that it would be best to convert the building to co-operative ownership. To this end, the defendants were the sponsors of a noneviction plan which was filed with the office of the Attorney-General in October, 1978. This plan provided, in part, that none of the residential apartments were subject to rent control or rent stabilization and that the tenants in occupancy were entitled to remain in possession until expiration of their leases. The plan was, thereafter, declared effective on February 12, 1979.

The plaintiff initially declined to purchase the shares of stock allotted to his apartment. However, he later changed his mind and sought to purchase at the original insider price of $163,200. Defendant Schube rejected this offer. The new purchase price was $200,000. The plaintiff maintains that he accepted this offer and in reliance thereon secured a personal loan, obtained an engineer's study of the apartment and a mortgage commitment. The defendant, however, asserts that the offer was not firm; rather, it was conditioned on an immediate sale, which failed to materialize. After several months of presumed inaction on the part of the plaintiff, as frequently occurs in the City of New York, the price for this apartment increased by $15,000 and consequently the sale of the apartment was never consummated.

Approximately three weeks prior to the expiration of plaintiff's leasehold, the defendants notified plaintiff on September 4, 1980, that he would not be offered a renewal lease and demanded that he vacate the apartment on or before September 30. One day after expiration of this period, plaintiff commenced this action by order to show cause to protect his tenancy and to enforce his rights pursuant to the rent laws. The plaintiff obtained a preliminary injunction restraining the defendants from taking any steps to terminate or otherwise interfere with his tenancy, *pendente lite*. The plaintiff maintains that this building contains six dwelling units and the failure to offer a renewal lease, and the threatened eviction violate the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 *et seq.*) and Emergency Tenant Protection Act (L 1974, ch 576). The defendants, however, contend that the subject building houses one less dwelling unit and, therefore, the plaintiff is not a statutorily protected tenant and not entitled to a renewal lease. The defendants basically rely on two statutes in support of their position. They assert that the Rent Stabilization Law (Administrative Code, § YY51-3.0, subd a) applies to "Class A multiple dwellings not owned as a cooperative or as a condominium, containing six or more dwelling units". In addition, the Emergency Tenant Protection Act of 1974 provides, in pertinent part, that: "A declaration of emergency may be made * * * as to all or any class or classes of housing accommodations in a municipality, except * * * (4) (a) housing accommodations in a building containing fewer than six dwelling units" (L 1974, ch 576, § 5).

Both parties moved for summary judgment. The defendants sought to dismiss all 10 causes of action asserted in the amended complaint. The plaintiff cross-moved for judgment in his favor on the first and second causes of action, which alleged that the building contained six dwelling units and the defendants, by failing to offer a renewal lease and by threatening eviction, violated the rent stabilization and rent control laws. The court at Special Term concluded that the subject building contained less than six dwelling units and dismissed the first, second and third causes of action, since these were predicated on the statutory protec-

tion afforded tenants who reside in a building with a minimum of six residential apartments. The court also dismissed the tenth cause of action, which alleged the existence of a binding oral contract of sale for plaintiff's apartment, on the grounds that the part performance allegedly undertaken by the tenant was insufficient to avoid the operation of the Statute of Frauds. As to the fourth cause of action, which alleged a failure on the part of defendants to deliver a final version of the co-operative plan to plaintiff, the court found that a question of fact existed as to whether there was delivery. The remaining causes of action, fifth through ninth, which asserted irregularities, misrepresentations and omissions in the offering plan, were likewise determined to raise questions of fact which must await trial. These appeals followed.

Prior to 1945, the subject six-story building located at 19 East 73rd Street, was occupied as a single-family dwelling. In mid-July of that year, the then owner sought to convert this residence into a multiple dwelling. Pursuant to plans, which were duly filed, the owner constructed one duplex apartment on the first and second floors and one apartment on each of the remaining four floors. A certificate of occupancy (CO) was issued on January 14, 1946, which reflected this new five-apartment configuration. This same certificate was still valid when title to the property was later transferred to Morris Schube in 1968.

Since the date of completion of these renovations, the upper four floors of this multiple dwelling have been occupied in a manner that conformed to the existing CO. However, the use history of the first two floors is not as consistent. It is this utilization which lies at the center of the present controversy and, it is to this contested use which we now direct our attention.

Apparently, in 1948, the then owner, Lillian Bode, registered the duplex apartment, which, as afore-mentioned, occupied the first two floors of this building, with the rent commission as separate housing accommodations. As a result the building contained a total of six apartments in violation of the existing CO. It is this registration upon which the plaintiff predicates his claim that the building contains more than five dwelling units and is, therefore,

subject to rent controls. However, in 1956, the use of these two floors was again changed. At that time this entire space was rented to one commercial tenant, the Language Guild. This occupancy lasted approximately 12 years, until after conveyance of title to the defendants. It was not until after this commercial tenant vacated the premises in late 1968 that the defendants first became aware of the prior violation of the CO by the former owner. The defendants then sought an order decontrolling the duplex apartment. On November 25, 1968, the Department of Rent and Housing Maintenance issued orders which declared that the second floor was decontrolled, but that the first floor was ineligible for decontrol. No appeals were taken from these determinations.

The defendants then entered into negotiations to lease the duplex apartment for combined professional and residential use. However, these efforts failed and, in August, 1969, one year after title had been conveyed, the defendants submitted an application to the Department of Buildings to alter the building to provide for a professional office on the first floor and one apartment on the second floor. After completion of these latest renovations, an amended CO was issued in March, 1971, which is still in existence today. This certificate reflected the new interior arrangement of one professional office on the first floor and one apartment on each of the remaining five floors. However, prior to the issuance of the amended CO, the first floor professional office was leased in February, 1970 to a doctor specializing in podiatry. This tenancy lasted for the next decade until January, 1980.

It is apparent that for 35 years now, this building has been a multiple dwelling. Throughout this time, the applicable certificates of occupancy have consistently reflected a five-apartment configuration for this building. The mere fact that a prior owner circumvented these standards by creating, for an insignificant period, a sixth apartment can by no means design, for all times, a building with this addition. This indiscretion cannot be imputed to the present owners especially where the latter purchased the premises without knowledge of this illegality and where the illegal use ceased long before the date of purchase

(*Matter of 54/55 Sixth Realty Corp. v Leventhal*, 42 NY2d 935). In addition, in the 1968 contract of sale, the sellers, the only ones in a position to know of the prior nonconforming use, affirmatively assured the purchasers that "none of the apartments are subject to rent control." Surely, this was a fact upon which the buyers could rely particularly since all official documents report that this dwelling contains five apartments and since the prior owner never disclosed the increase in the number of units. Yet the first three causes of action in the amended complaint are predicated on the building having six residential dwelling units and, therefore, subject to controls. Once Special Term determined that the building had less than six dwelling units which, under the facts presented, was abundantly correct, these causes of action were properly dismissed. Indeed, the theory advanced by the plaintiff-appellant would only be valid if the building contained that sixth apartment. Since it does not, the defendants were not obligated to offer plaintiff a renewal lease (see Administrative Code, § YY51-3.0). The plaintiff simply cannot alter the established legal status of this building by pointing to a prior, temporary unauthorized use by a former owner.

■ The plaintiff in the tenth cause of action maintains that these parties entered into an oral contract for the sale of this apartment in January, 1980 for the sum of $200,000. In reliance thereon, the plaintiff, it is alleged, undertook certain actions sufficient to constitute part performance of this contract. We are of the opinion that Special Term was correct in finding that these actions — securing a loan, obtaining a mortgage commitment and engineer's inspection — do not amount to such part performance as to remove the bar of the Statute of Frauds (General Obligations Law, § 5-703).

Sixty years ago, Judge CARDOZO specified that quality of conduct which would move a court of equity to enforce an oral contract for the sale of real property. In *Burns v McCormick* (233 NY 230, 232), it was stated that: "Not every act of part performance will move a court of equity, though legal remedies are inadequate, to enforce an oral agreement affecting rights in land. There must be performance 'unequivocally referable' to the agreement, perfor-

mance which alone and without the aid of words or promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing. * * * What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done." The actions of the plaintiff tenant, standing alone, are not "unequivocally referable" to a contract for the purchase of a co-operative apartment. They are actions any prudent investor would initially undertake prior to entering into a contract of this proportion. What gives these actions alleged significance is the purported underlying contract. When viewed in isolation, these deeds are preliminary and do not in any sense refer to an oral agreement for the sale of the apartment, as is required, to avoid the operation of the statute.

■ ■ Having reached the above conclusions, that the building is not subject to controls and that the plaintiff is a nonpurchasing tenant, the remaining causes of action (fourth through ninth) in the amended complaint, should have been similarly dismissed.

These six causes of action, in one form or another, relate to the subsequent conversion process. Since defendants were not required to offer plaintiff a renewal lease, whatever rights plaintiff had in this apartment would have been extinguished at the term of his leasehold. The process of conversion to co-operative ownership would have been complete after this event — at a time when plaintiff could suffer no damage. Since the plaintiff had no continuing rights or interests in this realty (*Richards v Kaskel,* 32 NY2d 524), the complaint, even if valid, would not effect this "former" tenant because his interests would have already ceased to exist. To hold that plaintiff could challenge the co-operative plan would be to cloak him with the same rights as a tenant in a rent stabilized building, which this premises was not, and to grant him the same rights as a purchasing tenant, which he also was not. This we are not prepared to do in light of the facts of this case. In short, plaintiff lacks any semblance of standing to seek redress for these alleged grievances.

Accordingly, the order, Supreme Court, New York County (GROSSMAN, J.), entered on September 3, 1981,

which granted defendants-respondents' motion for summary judgment only on the first, second, third and tenth causes of action asserted in the amended complaint and denied plaintiff-appellant's cross motion for summary judgment on the first and second causes of action, should be modified, on the law, to the extent of granting defendants' motion for summary judgment on the remaining causes of action, and the amended complaint dismissed, with costs and, as thus modified, otherwise affirmed.

CARRO, SILVERMAN, BLOOM and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on September 3, 1981, unanimously modified, on the law, to the extent of granting defendants' motion for summary judgment on the remaining causes of action, and the amended complaint dismissed, and as thus modified, otherwise affirmed. Defendants shall recover of plaintiff $75 costs and disbursements of these appeals.