OPINION OF THE COURT
Norman C. Ryp, J.
Rent Stabilization Law (Administrative Code of City of New York § 26-501 et seq. [RSL]) maximum rent cap or fair market rental capitalization under RPAPL 749 (3)?
The defining issue of first impression is whether RPAPL 749 *893 (3) retroactive (63 months) use and occupation between lease termination and issuance of a warrant of eviction for tenants’ nonprimary residence determined by a reversing appellate court is limited by the current stabilized rent or fair market value.
A. PROCEDURAL HISTORY AND FACTS
This RPAPL 753 application by respondents occupants Ann Turkel, Inc. (ATI) and Ann Turkel (Turkel), respondents tenant and undertenant, respectively, for a maximum six months’ stay of the warrant of eviction from and fixing reasonable use and occupancy for apartment 36E (a 7-room apartment, including 3 bedrooms, a maid’s room, 4 Vi bathrooms with a terrace or balcony and panoramic view totaling some 2,800 square feet — subject apartment) of premises No. 425 East 58th Street, New York, New York (the Sovereign).
The relevant facts are that Ms. Turkel, a model, television and motion picture actress, and public relations spokesperson for swimwear, moved into her rent-stabilized subject apartment in the Sovereign, under lease to ATI, with her former husband, actor Richard Harris, in 1974. In 1978, under the sponsorship of petitioner’s late husband, Sigmund Sommer, the Sovereign was converted into a cooperative, under a "non-eviction” plan, including subject apartment which ATI and Turkel chose not to purchase. ATI continued to receive RSL renewal leases for subject apartment until September 30, 1982 for which ATI paid one third and Ms. Turkel paid one third of the rent. During this period, Turkel claims to have made extensive renovations and kept valuable furnishings, antique box and doll collections, works of art and personalty exceeding $200,000.
In October 1983, petitioner commenced a former Code of the Rent Stabilization Association of New York City, Inc. § 54 (E) (now Rent Stabilization Code [9 NYCRR] § 2520 et seq. [RSC]) holdover summary proceeding based upon Turkel’s nonprimary residence, which petition was dismissed, with prejudice, after trial before then Housing (now Civil Court) Judge Jay Stuart Dankberg during 1984-1985 by final judgment and order, dated February 6, 1986, which was unanimously reversed and a final judgment of possession granted in favor of petitioner, by order of the Appellate Term, First Department, filed October 23, 1987, with leave to appeal to the Appellate Division, First Department, denied by its order, dated January 5, 1988.
*894 On January 14, 1988, an order to show cause (including a temporary restraining order, pending hearing, subsequently extended to this determination) was signed by Judge Leonard N. Cohen, returnable January 21, 1988. Such was later adjourned by this.court to January 26, 1988, which set monthly use and occupancy at $2,482.20 (covering Jan. and Feb. 1988, subject to further order of the court) and a hearing commencing February 4, 1988. Such continued to parts of February 5 and 9, 1988 when both parties rested and submitted posthearing memoranda on February 22, 1988.
At the hearing, Ms. Turkel testified she suffers from chronic fatigue over the past seven years, has been the only permanent resident since 1976 of subject apartment, wherein she removed a bedroom wall and enlarged her living room and of which respondent submitted 23 (3½ inch by 5 inch) color photos as fair and accurate representations reflecting various antique furniture furnishings (including a 6½-foot-by-d-foot antique breakfront, 10-foot couch, various antique collections), artworks and clothes.
Ms. Turkel further testified that: she still rents the Beverly Hills, California (1 bedroom — 1,300 square feet — plus 2-car [Rolls-Royce and Mercedes-Benz] garage), home at $2,000 a month; since finally losing her appeal in early January 1988 has completed 5% of packing with 7 cartons sent out to a used clothing store; obtained at least 2 movers’ estimates exceeding $10,000 each; with little to no room available (except for sleeping and some clothes in her parent’s [mother, respondent Thelma Turkel] Scarsdale home [her former bedroom converted into father’s office] or Park Ave. apartment); and she earned $37,000 to $40,000 in 1987 plus $80,000 annually available from her matrimonial settlement plus $30,000 cash, with a current recording as a rock and roll singer. Upon cross-examination, Ms. Turkel stated she: took no relocation steps from the Appellate Term, First Department, reversal (Oct. 23, 1987) to the Appellate Division, First Department, decisions (Jan. 5, 1988); first tried to raise money to buy the cooperative shares for subject apartment; left New York City to be in Los Angeles to seek relocation and meet work obligations, with much, if not most, of her valuable furniture installed in her previous apartment.
For the defendant, Byron Greenfield, a New York State licensed (since 1952) real estate broker, specializing in and supervising the Sovereign sponsor’s rentals and sales testified that the reasonably current monthly rental market values for *895 the Sovereign’s apartment "E” and "H” lines (both with an area of approximately 3,000 square feet) unfurnished are as follows:
* (a) Apartment 12H— 2 year (1986-1988) lease $ 7,150
* (b) Apartment 16H— 2 year (1987-1989) lease $ 7,400
(c) Apartment 29E — on the market asking $ 8,500
(d) Apartment 30E — 2 year (1987-1989) lease $ 8,000
(e) Apartment 32E — 2 year (1987-1988) lease $ 7,500
(i) Apartment 42E — (1) 1 year (1982-1983) lease $ 7,500
(2) 1 year (1987-1988) lease $10,000
* lesser view
The cooperative monthly maintenance for subject apartment 36E was $3,223.14, effective April 1, 1985.
On cross-examination, Mr. Greenfield testified that the "H” line generally sold for $500 per share ($5,200 v $4,700) because of an extra 300-square-foot bedroom than the "E” line; both ("E” and "H”) lines sold for $300 more per share because of a better view upon the 33rd floor and above (28th amendment to the Sovereign’s cooperative offering plan), and the above amounts were set before the October 19, 1987 "Black Monday” Wall Street "crash”; that there are no pending negotiations for the sale or lease of subject apartment 36E.
In view of respondents’ physical removal within four months of the November 27, 1987 final judgment of possession, the predicate for the issuance of a warrant of eviction, and less than the maximum six months (up to May 27, 1988) discretionary stay period (RPAPL 753 [1]) the issues of compliance with RPAPL 753 and the length of respondents’ stay are moot.
B. REMAINING ISSUES
The fulcrum issues now focus upon: (1) the amount of reasonable monthly use and occupancy; petitioner claims such should be at current market rents (between $7,500 and $10,000), while respondent contends that the current rent-stabilized rent ($2,484) still applies, both under the RSL and former RSC § 54 (E) thereunder and Real Property Tax Law § 421-a; and (2) the duration of such reasonable monthly use and occupancy. Petitioner submits retroactivity to September 1, 1983, the effective date of the original 30-day notice of *896 termination under RPAPL 749 (3) while respondent argues only from the beginning of the stay period in the RPAPL 753 order to show cause dated January 14, 1988.
c. parties’ contentions
Respondents originally sought a six months’ stay, effective from January 14, 1988- — date of the current order to show cause — under RPAPL 753, conditioned solely upon payment by ATI of reasonable use and occupancy at the agreed RSL monthly rent ($2,484.20) without regard to marketable rent for this stabilized subject apartment. Subsequently, this court received a photocopy of a letter, dated March 16, 1988, from respondent’s counsel to petitioner’s counsel that Ms. Turkel is 'scheduled to move on March 25, 1988, barring unforeseen delay and has since then vacated, according to respondent’s latest letter, dated April 7, 1988.
In opposition, petitioner argues that: respondent has not complied with RPAPL 753 requirements, i.e., use for dwelling, not storage, purposes; failure of good-faith attempts as well as due and reasonable efforts to secure suitable similar neighborhood premises or a showing of extreme hardship without a stay; if a stay be granted such be limited to six months from the date of the October 23, 1987 Appellate Term, First Department, decision (reasonable use and occupancy be set at current monthly marketable rents [between $9,000 and $10,000], deposited in full and retroactive to the Sept. 1, 1983 effective date of the original 30-day notice of termination), under RPAPL 749 (3).
D. APPLICABLE LAW AND FINDINGS
1. RPAPL 753 — Use And Occupation During Stay.
Upon the issue of the amount of reasonable use and occupancy, after thorough review of all the competent evidence and applicable law (see, Beacway Operating Corp. v Concert Arts Socy., 123 Misc 2d 452, 453-456 [Civ Ct, NY County 1984], and the authorities cited therein), this court determines, in fact and law, that the fair amount of reasonable occupancy, effective during the period of the stay, from January 14, 1988 (per order to show cause, signed by Judge Leonard N. Cohen, dated Jan. 14, 1988) to the end of the monthly rental period of removal from and actual surrender of subject premises, March 31, 1988 (unless otherwise shown by competent credible evidence), at the rate of $7,500 per month, totaling $18,750 less any and all rental payments made (at the rate of $2,484.20 *897 per month) and, if not already, to be credited (lease security deposit plus interest [General Obligations Law § 7-103]), payable occupying respondents, Turkel and ATI. In reaching this determination, this court has considered tenant’s contention that the stabilized rent continues during the RPAPL 753 stay appears contradicted by the plain language of RPAPL 753 (2) (prior rent "plus such additional amount, if any, as the court may determine to be the difference between such rent and the reasonable rent or value of the use and occupation of the premises”) and RPAPL 749 (3) which providés the issuance of a warrant of eviction "annuls the relation of landlord and tenant” (New York City Hous. Auth. v Torres, 61 AD2d 681, 682 [1st Dept 1978]), subject to equitable revival, the original amount requested in the original holdover petition ($7,000 per month), dated October. 20, 1983, the less than maximum duration of the stay (six months under RPAPL 753), the 1988 rental market value based upon all credible evidence including the above-noted expert testimony and the depressed short-term rental market for large luxury apartments following "Black Monday” stock market crash; the amount of the cooperative monthly maintenance charges ($3,223.14, eff Apr. 1, 1985); the lack of pending negotiations or offers for the sale (petitioner asking $1,300,000) or rental (petitioner asking $9,000 to $10,000 per month) for subject apartment 36E, the better view commanding a somewhat higher ($500) per share value and additional sale price for subject apartment 36E (222 shares X $500 = $111,000).
2. RPAPL 749 (3) — Retroactive Use And Occupation From RSL Renewal Lease Termination To Issuance Of Warrant.
Petitioner seeks reasonable use and occupancy, retroactive to September 1, 1983, the effective date of the original 30-day notice of termination, under RPAPL 749 (3) (Cooper v Schube, 101 AD2d 737 [1st Dept 1984]; Cooper v Schube, 86 AD2d 62 [1st Dept 1982]; Zohar Ben Dov v Harris, NYLJ, Dec. 7, 1984, at 11, col 1 [App Term, 1st Dept 1984]; Rasch, New York Landlord & Tenant — Summary Proceedings § 1406). Tenant, in opposition, argues the nonexistence or preservation of petitioner’s RPAPL 749 (3) action or application which was waived by obtaining subject final judgment of possession only, dated November 27, 1987, without a money judgment and distinguishes petitioner’s citations as involving premises originally exempt from the Rent Stabilization (Cooper v Schube, supra [5 not 6 dwelling units]) or Rent Control Laws (Zohar Ben Dov v Harris, supra [used for professional purpose only]) *898 contrary to subject apartment 36E and further notes Rasch (op. cit., § 363) requires an implied agreement to payment as a predicate for use and occupation liability.
RPAPL 749 (3) relevantly provides as follows: "The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises * * * Petitioner may recover by action any sum of money which was payable at the time when the special proceeding was commenced and the reasonable value of the use and occupation to the time when the warrant was issued, for any period of time with respect to which the agreement does not make any provision for payment of rent.” (Emphasis added.)
The plain words and clear meaning of the above statutory provision require some "action” by petitioner to assert and preserve whatever rights and remedies for prior "use and occupation” based upon an implied agreement to pay rent are available under RPAPL 749 (3) (see, Rasch, op. cit., § 363). In Beacway Operating Corp. v Concert Arts Socy. (123 Misc 2d 452, supra), a commercial holdover summary proceeding, the matter was referred by order of a then Housing (now Civil) Court Judge, Lewis R. Friedman, upon judgment, for a determination of the value of use and occupancy wherein no rental payments were made for 15 months and the duration of the stay of eviction, if any. Contrarily, in this case, the matter was set down by this court, by order dated January 26, 1988 under RPAPL 753 (1), upon respondents’ motion for a stay of execution of the warrant for a hearing upon the duration of the stay and reasonable use and occupancy thereunder. Previously, as noted above on November 27, 1987, pursuant to the order of‘the Appellate Term, First Department, dated October 23, 1987, a final judgment of possession only was signed by Judge Lewis R. Friedman, with no indication of any "action” or application or preservation of any rights before judgment or issuance of the warrant of eviction asserted by petitioner, under RPAPL 749 (3), for prestay use and occupation, during which period respondent tenants were paying and the petitioner accepting, with or without prejudice, the rent-stabilized rent of $2,484.20. As the court noted above, that under RPAPL 749, subject to equitable revival the issuance of the warrant of eviction "annuls” the landlord-tenant relation, whose logical corollary is the landlord-tenant relationship (under the Rent Stabilization Law herein) exists prior to the issuance of the warrant of eviction.
This court has been unable to find, after exhaustive re *899 search, any case or authority, wherein a nonoriginally exempt rent-stabilized tenant, as distinguished from petitioner’s citations, was required to pay retroactive use and occupancy (or retroactive RSL exemption) during the period of the tenant’s original rent-stabilized tenancy based upon nonprimary residence, under RPAPL 749 (3). In fact, the reverse has been stated by the former New York City Conciliation and Appeals Board (CAB), the prior (pre-Division of Housing and Community Renewal [DHCR]) RSL quasi-judicial administrative body, which stated in a matter involving the petitioner herein who was successful in a nonprimary residence case under then RSC § 54 (E) (now 9 NYCRR 2524.4 [c]), which simply authorizes a landlord not to offer a renewal lease but does not, per se, permit RSL overcharging (see, Matter of Sommer v Patton, Inc., CAB opn No. 23,851, Dec. 6, 1982, citing Matter of Parkchester Mgt. Corp. v Rent Stabilization Assn., 44 NY2d 778 [1978]). At best, under former RSC § 54 (E) (now 9 NYCRR 2524.4 [c]) in a CAB certification to the Department of Housing Preservation and Development of the City of New York (now DHCR and Rent Stabilization Association) with the right to commence a holdover summary proceeding under RPAPL article 7. The court further notes that petitioner’s RPAPL 749 (3) claim for retroactive use and occupation at the rate of $9,000 per month for 51 months (Oct. 1982-Dec. 1987) exceeds $450,000 based upon a subsequent inflationary residential cooperative market and is almost four times the original insiders’ price of $125,000,, giving petitioner sponsor an inequitable windfall. While petitioner appears to have waived her right to RPAPL 749 (3) use and occupation, based upon the hearing and motional submissions, in the absence of the complete record on appeal, including the trial transcript and appellate briefs, this court cannot and does not make such determination herein, but denies petitioner’s RPAPL 749 (3) application, without prejudice. Respondent’s creative claim of waiver by accepting Real Property Tax Law § 421-a tax benefits is not supported by case law (Fasa Props. v Freidus, 103 AD2d 729, as amended 105 AD2d 621 [1st Dept 1984]).
Thus, this court denies, without prejudice, to petitioner’s right: any further "action”, if any, for RPAPL 749 (3) use and occupation; as well as for Real Property Law § 234 attorneys’ fees (Cier Indus. Co. v Hessen, 136 AD2d 145 [1st Dept 1988]).
E. CONCLUSIONS
Accordingly, respondent’s RPAPL 753 (2) application for a *900 stay is granted to extent of their occupancy until their legal surrender, on or about March 3, 1988, with reasonable use and occupation payable by respondents occupants, ATI and Turkel for the period, from January 14, 1988 until March 31, 1988 determined against at the rate of $7,500 per month (totaling $18,750) less the rent-stabilized rent ($2,484.20 per month) paid and a credit for any and all lease security deposit, plus General Obligations Law § 7-103 interest due and owing to respondents; and petitioner’s application for RPAPL 749 (3) retroactive use and occupation and Real Property Law § 234 counsel fees is denied, without prejudice.