[733 NYS2d 33]

KAY LOWINGER, Individually and as Parent and Natural Guardian of LIZA LOWINGER and Others, Infants, Respondent, v MAURICE LOWINGER, Defendant, and EDITH LOWINGER, Appellant.

First Department, November 15, 2001

## APPEARANCES OF COUNSEL

*Norman Solovay* of counsel, New York City (*Marshall & Solovay,* attorneys), for Kay Lowinger, respondent.

*R. Scott Greathead* of counsel, New York City (*Howe & Addington, L. L. P.,* attorneys), for Liza Lowinger and others, respondents.

*Nathan Lewin* and *Richard H. Dolan* of counsel (*Bennette D. Kramer* and *Noam B. Fischman* on the brief; *Mintz Levin Cohn Ferris Glovsky & Popeo, P. C.,* Washington, D.C., and *Schlam Stone & Dolan, L. L. P.,* New York City, attorneys), for appellant.

## OPINION OF THE COURT

WILLIAMS, J.

This appeal presents the question of whether an alleged oral agreement to provide one with various financial benefits in exchange for undergoing religious conversion is enforceable.

Plaintiff is a South Korean native who is seeking to enforce an oral contract entered into with her mother-in-law, Edith, a

defendant. Defendant, the principal of a lucrative family import-export business, and her family, including her son, Louis, plaintiff's spouse, are practicing Orthodox Jews. The agreement arose as a result of plaintiff's marriage to Louis. Plaintiff met Louis in 1973 while working as a flight attendant for Northwest Airlines. They were married in a civil ceremony in Seoul, Korea after a one-year whirlwind courtship, in which Louis pursued plaintiff across the globe. No one from Louis's family attended the wedding and plaintiff met none of her husband's family before the wedding. After the marriage, plaintiff followed Louis on his world-wide travels on behalf of the family business; the company had apartments in Tokyo, Paris and Hong Kong, among other locales. Plaintiff soon discovered that Louis had always been dependent upon his family's largesse and suffered from mental instability. For example, Louis followed plaintiff 24 hours a day, even into the bathroom, did not allow her to make or receive phone calls, and slept in front of the bedroom door to prevent her from escaping. At one point, plaintiff attempted suicide; however, eventually, the couple had three children and resided in Larchmont, New York.

According to plaintiff's trial testimony, she and defendant allegedly reached the oral agreement in January 1980, after Louis had badgered her about converting to Judaism and her mother-in-law had voiced concern that the oldest child could not enroll in the local orthodox yeshiva because plaintiff was not Jewish. In the agreement, the mother-in-law purportedly promised to support plaintiff and her children if she converted to Judaism and raised her children as Orthodox Jews. Specifically, the mother-in-law was said to have promised that if plaintiff converted, she would provide (1) a "wonderful home" for her, Louis and the children; (2) a generous lifestyle for the rest of their lives; (3) the best education that money could buy for the children; (4) financial support at the same level for plaintiff, the children and Louis for the rest of their lives; (5) employment in the family business for the children if they wished it; (6) testamentary financial provisions for plaintiff's children equivalent to those of the mother-in-law's other grandchildren; (7) acceptance of plaintiff and her children as members of the family.

Plaintiff allegedly agreed to the offer but never disclosed her conversation with defendant to anyone, not even family members. She and Edith never discussed the agreement or related matters again and there was no written memorialization

of it. Soon after the agreement was reached, Edith arranged for the religious conversion of plaintiff and the children in Israel by the Chief Sephardic Rabbi of Israel. On a subsequent trip to Israel, the couple was married in a religious ceremony. Upon plaintiff's conversion, Edith proved to be as good as her purported word. She provided the family with a 27-room mansion in Harrison, New York situated on two acres, plaintiff's petty cash stipend was increased from $200 to over $12,000 per month and plaintiff was given a no-limit charge card. Her annual support increased to approximately $500,000, and for the first time, plaintiff and her children were invited to family functions at the clan's Borough Park compound. Edith attended the children's bat and bar mitzvahs and their graduations from yeshiva. However, in 1993, when plaintiff commenced divorce proceedings against Louis in Supreme Court, Westchester County, all financial support stopped. This action was commenced in 1995 in Supreme Court, New York County on behalf of plaintiff and her children seeking, in essence, specific performance of the alleged oral contract.

Defendant first attacked the complaint after joinder of issue, but prior to discovery, by motion to dismiss and/or for summary judgment. Plaintiff cross-moved for leave to file an amended complaint. The IAS court granted the cross motion in part and denied it in part. Upon appeal, this Court modified the IAS court's order by permitting plaintiff to amend the complaint to include a claim sounding in breach of oral contract. The Court held that there were issues of fact as to whether plaintiff's religious conversion constituted part performance and unconscionable injury, which could remove the alleged oral contract from the Statute of Frauds (*Lowinger v Lowinger*, 233 AD2d 236).

Upon remand to the trial court and after discovery was completed, defendant moved for summary judgment on the grounds that the alleged oral agreement was barred by the Statute of Frauds, that the agreement was too vague to be enforced and that enforcement of the agreement would be against public policy. Defendant also claimed that plaintiff's conversion was not unequivocally referable to defendant's alleged promise of the mansion and generous future support; it could also be attributed to Louis's desire that the children attend an orthodox yeshiva.

The court (Barbara Kapnick, J.), in an order entered April 6, 2000, held that this Court's decision (*Lowinger v Lowinger*, *supra*) had decided the issues raised by defendant and would

not permit them to be reargued by summary judgment motion. The only remaining issues were said to be whether the equitable doctrines of part performance and/or equitable estoppel barred application of the Statute of Frauds and whether, after discovery, defendant was unable to demonstrate that the equitable doctrines were inapplicable as a matter of law. Questions of fact were said to remain "as to whether plaintiff's conversion and defendant's acts thereafter are solely and 'unequivocally referable' to an oral promise allegedly made by the defendant; whether they are ' "unintelligible or at least extraordinary", explainable only with reference to the oral agreement' [citations omitted]." The court further held that the enforcement of such an agreement would not violate public policy, that the matter could be decided by settled principles of contract law and that no inquiry into religious law was necessary.

At the bifurcated trial, the issue was limited to whether or not the parties ever made an oral agreement and, if so, what were its terms. In addition to the testimony elicited from plaintiff recounted *supra*, both parties introduced testimony from religious experts on conversion to Judaism, and defendant testified. The expert testimony conflicted as to whether the rabbi who performed the conversion would have inquired as to the motive for the conversion, plaintiff's expert asserting that most rabbis would not and defendant's stating that such question would be asked at least twice during the process. Defendant, 77 years old at the time of trial, categorically denied plaintiff's contentions that there was a meeting between the two, that any promises were made to plaintiff and that she had sought to induce plaintiff's conversion. She claimed the mansion in Harrison was purchased as an investment, not as a gift to the couple as plaintiff alleged.

The jury unanimously found that the two parties entered an oral agreement in 1980 and that defendant promised to: (1) treat plaintiff and her children as family; (2) increase the family's stipend since Louis had an Orthodox Jewish family to raise; (3) give plaintiff a "wonderful" house for the family; (4) provide an education for the children; (5) provide employment in the family business for plaintiff's children if they desired. The jury vote was 5 to 1 in finding that defendant agreed to provide rights of inheritance to plaintiff's children equal to her other grandchildren and in finding that defendant did not agree to provide plaintiff with unlimited funds. The court declined to set aside the verdict and an interlocutory judgment was entered reflecting that verdict.

In our view, the alleged oral agreement at issue here may not be enforced inasmuch as it is too vague and it falls within the Statute of Frauds. Consequently, the IAS court erred in denying defendant's motion to set aside the verdict to the extent that the jury found against her.

■ With reference to defendant's assertion of the Statute of Frauds as a bar to enforcing the alleged agreement, the IAS court erred in reading this Court's decision on the motion to dismiss as addressing the merits of defendant's pleadings, instead of their sufficiency, and thus erred in failing to make a determination as to her Statute of Frauds contentions. We find that six of the seven promises allegedly made to plaintiff run afoul of the Statute of Frauds set forth at General Obligations Law § 5-701 (a) (1):

> "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his law-ful agent, if such agreement, promise or undertaking:

> "1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime."

The oral promises to provide (1) financial support to plaintiff and her children for their lifetimes; (2) the best education that money could buy for the children; (3) employment in the family business for the children if they wished it; (4) an inheritance for plaintiff's children equivalent to that of the mother-in-law's other grandchildren; (5) an increase in Louis's financial support to aid him in raising his Orthodox Jewish family; and (6) acceptance of plaintiff and her children as members of the family, all violate General Obligations Law § 5-701 (a) (1), since none of them could be fully performed within one year of the making thereof (see, *Nakamura v Fujii*, 253 AD2d 387, 388-389; *Matter of Sud v Sud*, 211 AD2d 423, 424). Among other things, at the time of these alleged promises, plaintiff's children were ages three, two and one. In addition, the oral agreement to make a testamentary provision violates the Statute of Frauds at EPTL 13-2.1 (a) (2) (*Dombrowski v Somers*, 41 NY2d 858, 859; *Matter of Chakine*, 273 AD2d 18).

The seventh oral promise, of a "wonderful house," violates General Obligations Law § 5-703 (1), which requires a writing to effect transfer of an interest in realty (see, *McDermott v*

*Town of Goshen,* 207 AD2d 612, 614). Although plaintiff moved into the Harrison estate at the time she converted to Judaism, the deed to the property, dated May 30, 1980, clearly states that the property is owned by a corporate entity and there is no indication in the record that a deed was delivered to plaintiff or Louis.

Plaintiff's assertion that the part performance exception to the Statute of Frauds removes the alleged oral agreements from its ambit is without merit. Plaintiff failed to meet the standard of showing that her performance of the oral agreement was "unequivocally referable" to the oral agreement (*Anostario v Vicinanzo,* 59 NY2d 662, 664). In order to do so, she needed to demonstrate that the conduct was " 'unintelligible or at least extraordinary,' explainable only with reference to the oral agreement" (*id.,* citing *Burns v McCormick,* 233 NY 230, 232; *Cooper v Schube,* 86 AD2d 62, *affd on opn below* 57 NY2d 1016). Plaintiff's trial testimony offered other motives for her conversion aside from defendant's promises. Plaintiff testified that her husband pressured her to convert because he wished it and to enable the children to attend the orthodox yeshiva, and that she felt she had to convert for her children's sake.

Moreover, several of the type of promises as are involved here have been held to be unenforceable as too vague and indefinite, such as employment for life (*see, Rooney v Tyson,* 91 NY2d 685, 691, citing *Arentz v Morse Dry Dock & Repair Co.,* 249 NY 439, 444), to treat someone as part of the family (*Hart v Windjammer Barefoot Cruises,* 220 AD2d 252, 253), or to provide financial support or take care of someone (*Dombrowski v Somers,* 41 NY2d 858, 859; *Matter of Sud v Sud,* 211 AD2d 423, 424). Alleged promises such as an unspecified amount of financial support or a "wonderful house" or of an inheritance for plaintiff's children equal to that of defendant's other grandchildren must fail as not subject to specific measurement. In the latter case, since the record shows that defendant has made no testamentary provision for any of her grandchildren, it is impossible to determine an amount to which plaintiff's children would be entitled. Even if such a provision existed, the amount of any inheritance would remain indefinite until defendant's death.

Plaintiff's assertion of the equitable doctrine of promissory estoppel, in attempting to avoid the affirmative defense of the Statute of Frauds, is impermissible here (*see, Cohen v Brown, Harris, Stevens,* 64 NY2d 728, 730). In addition,

plaintiff failed to meet the doctrine's unconscionable injury requirement in that the injury she alleges, her unhappy 20-year marriage to Louis, pre-existed and did not result from her conversion or being an observant Jew for 15 years (*see*, *Tutak v Tutak*, 123 AD2d 758, 760).

Finally, although we need not reach defendant's contention that the alleged agreement by a parent to rear her children in the observance of a particular religion is void as against public policy, we would note that it is well settled in New York law that such agreements are permissible and do not implicate public policy (*Weinberger v Van Hessen*, 260 NY 294, 298).

Accordingly, the interlocutory judgment of the Supreme Court, New York County (Barbara Kapnick, J.), entered on or about October 31, 2000, which, following a bifurcated jury trial on the issue of liability, found that Edith Lowinger agreed to provide plaintiff Kay Lowinger and her children certain financial benefits in exchange for her religious conversion to Judaism, should be reversed, on the law and the facts, without costs, the judgment vacated and the complaint dismissed. The Clerk is directed to enter judgment accordingly. The appeal of the order, same court and Justice, entered on or about April 6, 2000, insofar as it declined to dismiss the complaint, pursuant to CPLR 3212, as against Edith Lowinger, should be dismissed, without costs, as subsumed in the appeal from the judgment.

Motion seeking leave to file amicus curiae brief denied. Motion seeking stay of discovery pending decision of appeal and for other related relief denied as moot.

SULLIVAN, P. J., NARDELLI, MAZZARELLI and SAXE, JJ., concur.

Interlocutory judgment, Supreme Court, New York County, entered on or about October 31, 2000, reversed, on the law and the facts, without costs, the judgment vacated and the complaint dismissed. Appeal from order, same court, entered on or about April 6, 2000, dismissed, without costs, as subsumed in the appeal from the judgment. Motion seeking leave to file amicus curiae brief denied. Motion seeking stay of discovery pending decision of appeal and for other related relief denied as moot.