dissents in a memorandum as follows: In late 1993, after a major billing problem involving overcharges at the *231 law firm of Rogers & Wells came to light and while an internal investigation was still underway, plaintiff, a 55-year-old partner for over 20 years and responsible for one of the firm’s largest clients, accepted, in writing, “full responsibility” for the “serious and systemic” billing problem and resigned from the firm’s executive committee and as head of the litigation department. In December 1994, the firm’s executive committee met and agreed to ask plaintiff to withdraw from the firm.
Shortly after the December 1994 meeting, the managing-partner, a member of the committee, and another partner met briefly with plaintiff to tell him that because of the billing problem the executive committee had lost confidence in him and wanted him to withdraw from the firm by the end of 1995. The managing partner told plaintiff that if he resigned he would receive a four-year payout of 37.5% of the actual distributions that he would have received had he remained with the firm. The payout was one of the benefits that the firm’s Partnership Agreement permitted the executive committee to award to a partner who withdrew or retired before the age of 65. Plaintiff readily agreed to the proposal. Although it constitutes a bone of contention in this case, plaintiff claims that, in addition, he was orally promised that at the end of the four-year payout, he would receive supplemental retirement payments (SRPs), monthly payments for life referred to in the Partnership Agreement for which partners retiring after reaching age 65 (Normal Retirement) might qualify under the Partnership Agreement. There is no written agreement memorializing the terms of plaintiffs alleged agreement with the firm.
In January 2000, four years after he withdrew from the firm after receiving the annual payout of 37.5% of distributions, plaintiff contacted the firm and inquired about the payment of SRPs. The matter was referred to the former executive committee of the firm, which, effective January 1, 2000, had combined with Clifford Chance to form Clifford Chance Rogers & Wells, LLP The executive committee confirmed that plaintiff was not entitled to SRPs. When the firm denied ever making such an agreement and refused to make any SRP payments, this lawsuit followed. On cross motions for summary judgment, Supreme Court found plaintiffs contract claim void under the statute of frauds because the alleged oral agreement could not be performed within one year and that the documents upon which plaintiff relied failed to satisfy the statute. The majority agrees with the latter finding but not the former. I would affirm.
In his complaint, plaintiff alleges that at an early January 1995 meeting, James Asher, the firm’s managing partner, asked *232 him to withdraw from the firm and stated that, if he did, he “would be treated under the Partnership Agreement as taking early retirement at the [fjirm’s request” and receive the 37.5% payments for four years, and following that he would receive SRPs for life. In a last-ditch effort to avoid the bar of the statute of frauds, plaintiff now claims that the alleged oral agreement was one merely to allow him to take Early Retirement Status if he withdrew from the firm, claiming that such a change in status was fully performable within a year. Having changed his status, he asserts, he became entitled to SRPs under the written terms of the Partnership Agreement.
As a withdrawing partner, plaintiffs rights were governed by the Partnership Agreement, which, expressly incorporating into it the firm’s Retirement Plan for Partners (RPP), provided for three categories of retirement: “Early Retirement” (ages GO-64), “Normal Retirement” (beginning at age 65) and “Mandatory Retirement” (beginning at age 70). A partner who “has retired in accordance with the provisions of th[e] plan” is defined as “Senior Counsel.” When plaintiff withdrew from the firm on December 31, 1995, he was 57 years of age and did not fall within any of the three categories.
As provided in articles VIII and X of the Partnership Agreement and section 5.4 of the RPR only partners who elect Normal Retirement or are subject to Mandatory Retirement were entitled to SRPs. Under article VIII, partners who take Normal or Mandatory Retirement “receive the following payments in full satisfaction and in full accounting” of their partnership interest and income units in the partnerships: (a) a four-year payout of 37.5% of the cash distributions the partner would have received had he not retired, (b) the amount of the retiring partner’s net capital account, (c) the actual cash distributions made to the partner through the end of the month in which the partner retires and (d) the amounts payable under the provisions of the RPR which include SRPs.
Plaintiffs rights, as a withdrawing partner who had not yet reached age 65, were governed by article X (a), which provided that such partners
“shall receive the following payments in full satisfaction and in full accounting of the Partner’s Partnership interest and Income Units in the Partnership:
“(i) The amount in the Partner’s net capital account computed as provided in Article VII, shall be paid, without interest not later than one year after the date of withdrawal or retirement;
“(ii) The Partner may retain actual cash distributions made to the Partner on or before the date of his or her withdrawal or retirement; and
*233 “(iii) The Partner’s share of Partnership profits for such year shall equal the actual cash distributions made to the Partner on or before the date of his or her withdrawal or retirement.” Unlike article VIII (d), article X (a) does not incorporate the benefits provided in the RPP; nor does it give a partner, such as plaintiff, who withdrew before the age of 65 any right to SRPs.
Furthermore, as to partners like plaintiff, who withdraw or retire other than in accordance with the Normal or Mandatory Retirement, article X (b) provides: “[T]he Executive Committee may, in its sole discretion and notwithstanding any other provision of this Agreement, enter into a written agreement with the withdrawing or retiring Partner authorizing payment to the withdrawing or retiring Partner [sic] additional amounts not in excess of the sums which would be paid under Article VIII to a Partner withdrawing in accordance with Normal Retirement or Mandatory Retirement as defined in the Rogers & Wells Retirement Plan for Partners. Nothing in this Agreement, however, shall be construed to require the Executive Committee to enter into such an agreement or to otherwise authorize any payments to a withdrawing or retiring Partner pursuant to this subparagraph.”
This provision cannot be read, as the majority holds, as permitting an oral authorization of SRP payment. The discretionary may is limited to authorization by writing only.
The RPP provides, in section 5.4, that “[t]he Supplemental Retirement Payment shall not be paid to a Partner who takes Early Retirement, except at the specific written request of the Executive Committee.” Thus, in order to obtain SRPs, a partner taking Early Retirement must have a writing from the Executive Committee authorizing the payment thereof. There is no such writing in the record.
Plaintiff, an experienced and sophisticated commercial litigator and partner in the firm for 25 years, familiar with the provisions of the Partnership Agreement relating to SRPs, must have known that the statute of frauds would require a writing to make enforceable a purported oral agreement for the payment of SRPs that would not even begin until four years after he withdrew from the firm and, in any event, could not be completed before the end of his lifetime.
On or about February 6, 1996, the firm’s Director of Finance, its controller and a firm administrator signed a Change of Status Form listing plaintiff as Senior Counsel; the form said nothing about any alleged agreement between the firm and plaintiff for the payment of SRPs. On March 12, 1996, a benefits consultant at the firm sent a form letter to plaintiff enclosing the Firm *234 Benefits Guide, which, with respect to SRPs, states that “Supplemental Retirement Payments are payable monthly following your retirement for your life.” On page 1, it also states that “this Guide ... is intended as a general summary for your convenience and does not constitute an official summary of any such plans. Any conflicts between these descriptions and the provisions of the legal plan documents will be governed by the provisions of the plan documents.”
To be effective, the purported oral promise that plaintiff receive SRPs, whether or not based on a change of status to that of Early Retirement, must be in writing because the first payment was not to be made for four years and, thus, was “not to be performed within one year” (Freedman v Chemical Constr. Corp., 43 NY2d 260, 265 [1977]; Lowinger v Lowinger, 287 AD2d 39 [2001], lv denied 98 NY2d 605 [2002]). Plaintiffs change of status argument and the majority’s conclusion that the oral agreement is not within the statute of frauds is fatally flawed because it proceeds on the false premise that partners taking Early Retirement at the request of the executive committee automatically qualify for SRPs. In clear and unambiguous terms, section 5.4 of the RPI] as previously noted, provides that SRPs “shall not be paid to a Partner who takes Early Retirement, except at the specific written request of the Executive Committee.”
At the heart of plaintiffs argument and the majority’s determination is a construction of section 5.4 which automatically entitles a partner who takes early retirement at the request of the executive committee to the payment of SRPs. The majority reasons that section 5.4 “should be read as conveying the sentiment that SRPs shall not be paid to a partner who takes early retirement unless the early retirement was at the specific written request of the executive committee.” If the majority’s construction were the intended one, the agreement would provide, “The Supplemental Retirement Payment shall not be paid to a Partner who takes Early Retirement, except if the partner takes Early Retirement at the specific request of the Executive Committee.”
In any event, even if the majority’s interpretation of section 5.4 is correct and does permit, without the written request of the executive committee, the payment of SRPs to a partner who takes Early Retirement at the committee’s request, there is nothing in section 5.4 which leaves room for a construction requiring the payment of SRPs to such a partner. Without belaboring the point, it makes no sense to construe the agreement so as to reward a partner who takes Early Retirement at *235 the request of the committee, i.e., who, at least in some circumstances, is being asked to leave the firm, in effect, being “shown the door.”
In addition, although article X (b) of the Partnership Agreement provides that if a partner takes other than Normal or Mandatory Retirement “at the specific written request of the Executive Committee, the Executive Committee may, in its sole discretion and notwithstanding any other provision of this Agreement, enter into a written agreement with the . . . Partner authorizing payment to the . . . Partner [szc] additional amounts not in excess of the sums which would be paid [to a Partner taking Normal or Mandatory Retirement],” the same subparagraph also provided that “[n]othing in this Agreement . . . shall be construed to require the Executive Committee to enter into such an agreement or to otherwise authorize any payments to a withdrawing or retiring Partner pursuant to this subparagraph.”
Thus, even if the firm agreed to treat plaintiff as if he had taken Early Retirement under the RPR rather than early retirement as a face-saving device to disguise his expulsion, as testified to by the partner who led the firm’s internal investigation into the billing problem, that agreement does not automatically entitle plaintiff to SRPs. Since any agreement to pay SRPs at the end of four years would have been a separate agreement, collateral to the agreement to accord plaintiff Early Retirement status, the agreement as to SRPs would not be capable of being performed within one year and is thus unenforceable.
Plaintiff argues that he was entitled to SRPs because of his listing as Senior Counsel on the Change of Status Form and in the Benefits Guide and letter of transmittal. Not only did plaintiff fail to meet the definition of Senior Counsel, but even the designation as Senior Counsel does not entitle a partner who retires before age 65 to receive SRPs. Senior Counsel is defined in the Partnership Agreement as “a Partner who has retired in accordance with the provisions of this plan.” Since he retired at age 57, plaintiff did not retire in accordance with the provisions of the RPP because he did not fall within any of the defined categories of Early (60-64), Normal (65-69) or Mandatory (age 70) Retirement. But, even if plaintiff were to be deemed a Senior Counsel taking Early Retirement, he is not entitled to the payment of SRPs since he did not receive the written agreement for the payment of SRPs that article X (b) makes mandatory.
Moreover, section 6.1 of the RPP requires that each Senior Counsel enter into a written agreement with the firm in *236 exchange for receiving SRPs and all other benefits. Similarly, it should be noted, section 2.5 (b) of the RPP provides that “Senior Counsel shall receive the Supplemental Retirement Payments, if any, to which he is entitled in accordance with section 5 of this plan,” a clear acknowledgment that not all Senior Counsel are entitled to SRPs.
Since plaintiffs first cause of action alleging breach of an oral agreement (the only cause of action sustained by the majority, which concedes that plaintiffs attempts to cobble together writings sufficient to satisfy the statute of frauds fail) is barred by the statute, the complaint should be dismissed and the order appealed from affirmed.