OPINION OF THE COURT
Simons, J.
Plaintiff seeks to recover $11,000 for materials and services. The sum represents an agreed price of $12,000, *264 less $1,000 previously paid on account, due to plaintiff from Bon-Aire Construction Corporation pursuant to a roofing contract executed by the parties November 13, 1974. After completing the work in May, 1975, plaintiff sued the corporation, and when it failed to appear, plaintiff entered a default judgment on March 14, 1977. On June 7, 1977 plaintiff initiated the present action to recover the loss from defendant, a former officer of Bon-Aire Construction Corporation and a minority stockholder of Bon-Aire Industries, its parent, claiming defendant promised to pay him. Defendant denied the promise but alleged affirmatively that such promise, if made, was unenforceable because it was an oral promise to answer for the debt of another. Plaintiff recovered a jury verdict for its damages, but the Appellate Division reversed the judgment and dismissed the complaint finding the promise unenforceable. The issue is whether plaintiff’s evidence was legally sufficient to establish a prima facie case to take defendant’s promise out of the Statute of Frauds.
The statute provides that a “special promise to answer for the debt, default or miscarriage of another” may not be enforced unless it is in writing (General Obligations Law, § 5-701, subd a, par 2). Generally, the statute applies to circumstances in which the promisor has acted as surety of another (see 3 Williston, Contracts [3d ed], § 475; Restatement, Contracts 2d, § 112). There are surety situations in which no writing is required, however, e.g., if the promisee had no reason to know that the promisor was acting as a surety, when the duties of the principal and surety are joint or where the promise is made to the principal. We deal here with plaintiff’s claim that defendant’s promise is not within the statute because the promisor owed plaintiff an independent duty to pay. As to such promises, it has been stated that “[i]f, as between the promisor and the original debtor, the promisor is bound to pay, the debt is his own and not within the statute. ‘Contrariwise if as between them the original debtor still ought to pay, the debt cannot be the promisor’s own and he is undertaking to answer for the debt of another.’ ” (Witschard v Brody & Sons, 257 NY 97, 99, quoting 1 Williston, Contracts, § 472.) In the latter case the promise is unenforceable in the absence of some memorandum.
*265 The purpose of the rule is evidentiary, to avoid perjury, and incidentally to serve as a cautionary measure to avoid ill-considered actions (3 Williston, Contracts [3d ed], § 452; Farnsworth, Contracts, § 6.3; Restatement, Contracts 2d, § 112). In most oral contracts, a writing is not required because the promisor has received something and the circumstances show probable liability. When a party promises to answer for the debt of another, however, the benefit to the promisor is not apparent and so the promise, if it is to be enforceable under the statute, must either be evidenced by writing or plaintiff must prove it is supported by a new consideration moving to the promisor and beneficial to him and that the promisor has become in the intention of the parties a principal debtor primarily liable (White v Rintoul, 108 NY 222, 227; and see Bulkley v Shaw, 289 NY 133; Witschard v Brody & Sons, 257 NY 97, supra; Richardson Press v Albright, 224 NY 497). Thus, it was plaintiff’s burden within this rule to produce evidence showing a consideration moving to defendant and showing that the parties intended, as ascertained from the language used and from all the facts and circumstances surrounding the transaction (Clark v Howard, 150 NY 232, 238), that an independent contract was created between them which obligated defendant to satisfy the corporation’s debt in any event.
Plaintiff’s evidence established that it was hired by Bon-Aire Construction Corporation in the fall of 1973 or 1974 when its president and sole stockholder, William Martin, was asked to do some roofing work on low income houses the corporation was building in Rockland County. While working on that job, a company official asked Martin to look at the leaking roofs of houses in a nearby project, Lake View Village, and on November 13,1974 plaintiff executed a contract with Bon-Aire Construction Corporation, through Marvin Lifschitz, its treasurer, agreeing to make the repairs on the Lake View Village houses for $12,000. On December 26, 1974 plaintiff sent a bill to the corporation for $6,000 to pay for the work performed and received in return the corporation’s check for $4,000 on account. Subsequently the corporation’s bookkeeper advised Martin that only $1,000 should be credited to the Lake View *266 Village job and that the balance of $3,000 should be applied to other work plaintiff was doing for the corporation on the Eastchester Savings Bank building. Mr. Martin testified that he became concerned by the bookkeeper’s telephone call because the corporation then owed his company $19,000 for work completed on various jobs. He threatened to leave the Lake View Village job, but one of the corporation’s employees told him not to quit, that he was working for defendant and defendant always paid his bills. Martin then went to the corporation’s office and asked defendant for his money. He testified that defendant (by then no longer an officer of the corporation but a director and stockholder of its parent, Bon-Aire Industries) put his arm around him and said, “Bill, I’m going to make sure you get paid. I have to have this work done. Otherwise we don’t get paid for the job. I haven’t become as successful as I am by not paying my debts. I guarantee I will make sure you get paid.” With that Martin went back to work and his company continued to do work for the corporation and also for defendant until 1976. Plaintiff produced evidence that at the time of this conversation the corporation anticipated receiving several hundred thousand dollars from the Urban Development Corporation when the Lake View Village job was done.
Plaintiff was paid by the corporation for other jobs performed for it during 1975 and for subsequent jobs done for it in later years. It was not paid the $11,000 due on the Lake View Village job although the corporation offered to compromise the claim when it subsequently got into financial difficulties. Martin also testified that he received a partial payment from defendant personally on the Eastchester Savings Bank job in April, 1975 although the contract for work was with the corporation.
To prevail plaintiff was required first to establish consideration for defendant’s promise. It recognizes that the required consideration may not rest upon plaintiff’s return to work. That was legal consideration but the rule requires that the consideration must be beneficial to the promisor. Nor may a benefit to defendant be inferred solely because of defendant’s stock holdings in Bon-Aire Industries (see Bulkley v Shaw, 289 NY 133, supra; Richardson Press v *267 Albright, 224 NY 497, supra). Stockholders are not liable for the debts of a corporation and thus a stockholder’s promise to answer for the corporation’s debts ordinarily provides no more than a remote and indirect benefit to him. That is particularly so in this case in which defendant owned no stock in the construction corporation but only a 10% minority interest in its publicly owned parent.
Plaintiff maintains, however, that the beneficial consideration to defendant for his promise is to be found in defendant’s need to complete the job and free up the Urban Development Funds and his need of plaintiff to work on future jobs. Neither is legally sufficient. The benefit accruing from the Urban Development Funds was a benefit to the corporation and benefited defendant as a minority stockholder of the parent corporation only indirectly. The speculation that defendant wished to retain plaintiff’s goodwill for the future was also insufficient because the evidence does not establish what pecuniary advantage, if any, flowed to defendant from that employment and any benefit to him was neither immediate nor direct.
More to the point, under New York law, when the original debt subsists and was antecedently contracted, an oral promise to pay it is enforceable only when there is consideration for the promise which is beneficial to the promisor and the promisor comes under a duty to pay irrespective of the liability of the original debtor (White v Rintoul, 108 NY 222, 227, supra; and see Richardson Press v Albright, 224 NY 497, supra; cf. Rosenkranz v Schreiber Brewing Co., 287 NY 322; see, generally, Calamari and Perillo, Contracts [2d ed], § 19-8, p 687). Thus, even if there was sufficient consideration to defendant, he could not be liable if he was acting as a surety of the corporation.
There are several recognized tests for determining whether the promise created an independent duty to pay irrespective of the original debtor’s liability which may be applied here (see 3 Williston, Contracts [3d ed], § 462).
First, as noted, there was no beneficial consideration to defendant. Second, it is said that presumptively the new promise is unenforceable unless the corporation was discharged from its underlying obligation. Obviously the corporation’s debt was not discharged by the promise here *268 because plaintiff sued the corporation on it. Further, the evidence supports the Appellate Division’s finding that these parties assumed that the corporation was to remain liable and defendant’s promise was to be performed only if the corporation defaulted. Plaintiff executed contracts with the corporation both before and after this job without additional assurances of payment and when it was not paid for the Lake View Village work, it looked to the corporation first for payment. Similarly, although defendant’s oral promise was addressed to plaintiff’s claim of $19,000, which sum included $8,000 due on jobs other than Lake View Village, plaintiff sought and received payment of at least part of $8,000 apparently from the corporation. (The sum of $2,500 was allegedly paid by defendant personally for Eastchester Savings Bank, but it is not clear from the evidence whether the payment was made after a demand on the corporation or after a demand on defendant.) Despite its difficulties, plaintiff never made formal or written demand for payment on defendant until it commenced this action. Indeed, it sued the corporation first, and did so without naming defendant as a party, and took judgment against it on the claim (see Bulkley v Shaw, 289 NY 133, 136, supra). Even when it did sue defendant, the original complaint sought only damage for work, labor and services, and did not allege that defendant had made an independent promise to pay plaintiff. It was not until the complaint was amended, some five years after the promise was made, that plaintiff’s present claim was asserted for the first time. Finally, the form of the promise is significant. The language used, as plaintiff stated it, indicated that it was “guarantee”, i.e., that defendant was acting as a surety “to make sure you [plaintiff] get paid” (see Witschard v Brody & Sons, 257 NY 97, 99, supra).
Plaintiff contends alternatively that it may recover under the “main purpose rule” which permits defendant’s oral promise to be enforced even though he acted as surety of the corporation. The “main purpose rule” rests upon a recognition that in many cases the purpose underlying the statute may be satisfied if the evidence establishes that the promisor’s main purpose (or leading object, as it is also called) is a benefit which he did not enjoy before the *269 promise. The elements of the rule are consideration for the promise and a benefit which accrues to the promisor (see, generally, 3 Williston, Contracts [3d ed], § 470; Farnsworth, Contracts, § 6.3, pp 388-390; Restatement, Contracts 2d, § 116; Calamari, Suretyship Statute, of Frauds, 27 Fordham L Rev 332, 341; Conway, Subsequent Oral Promise to Perform Another’s Duty and the New York Statute of Frauds, 22 Fordham L Rev 119). It is said that the benefit must be immediate, personal, pecuniary and direct (Calamari and Perillo, Contracts [2d ed], § 19-6; see, also, Restatement, Contracts 2d, § 116, Comment 6). The rule is not recognized in this state but whether it or the New York rule is applied, the evidence does not establish consideration beneficial to defendant and plaintiff’s complaint was properly dismissed.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Kaye concur.
Order affirmed, with costs.