■ EMPIRE MUNICIPAL SUPPLY CORPORATION, Respondent, v T.I.J. MATERIALS CORPORATION, Defendant, and IBERIA ROAD MARKING CORPORATION, Appellant. [613 NYS2d 786] —Yesawich Jr., J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Zeck, J.H.O.), entered December 24, 1991 in Rockland County, upon a decision of the court in favor of plaintiff.

In July 1985, defendant Iberia Road Marking Corporation placed an order with defendant T.I.J. Materials Corporation

---

(hereinafter TIJ), a distributor of highway safety products, for 100,000 feet of lane marking tape to be used for a job on the Staten Island Expressway in New York City. TIJ attempted to order the tape from plaintiff, a wholesaler of paint and marking supplies, but was informed by Harvey Block, plaintiff's representative, that plaintiff would not sell the tape to TIJ on credit until payment was received for a prior order, shipped earlier that month. Block, having had previous dealings with Iberia, suggested to John Bredice, TIJ's president, that plaintiff would fill the order if it could bill Iberia directly; Block testified that Bredice agreed, but Bredice claims that he rejected this proposition. In any event, Block presented his idea to Jose Freire, Iberia's president, who, Block testified, agreed to a direct billing, the amount of which would include the commission or profit earned by TIJ, to be forwarded to that outfit by plaintiff upon payment.

Plaintiff ordered the tape from the manufacturer, Prismo Universal Corporation, to be delivered directly to Iberia, and after receiving a bill of lading, billed Iberia for $105,600, the agreed-upon amount. Iberia received the tape in August 1985, but because of delays in the Expressway project, did not begin to use it until October 10, 1985. Block testified that, in the interim, he called Freire several times requesting payment and was told that he would be paid as soon as possible, given the delays in the project. On November 4, 1985, plaintiff received a letter from Iberia's counsel stating that the tape was defective, that Iberia was not plaintiff's customer but TIJ's, and that plaintiff should therefore look to TIJ for payment. TIJ also sent a letter to plaintiff, dated November 14, 1985, in which it chided plaintiff for having improperly attempted to create a direct customer relationship with Iberia, and asserted that inasmuch as TIJ had not been informed that the order in question was being filled, and had not been billed for it, TIJ had never accepted the goods and therefore was not responsible for payment. TIJ also attempted to revoke any acceptance that had been made on the ground that the tape had a latent defect in that it "failed to meet required standards of adhesion", and requested that plaintiff pick up the remainder of the tape.

A meeting was held on December 19, 1985 between Freire, Bredice, Block and several representatives of Prismo to discuss return of the unused portion of the tape, which all agreed would be damaged by continued exposure to cold throughout the winter in Iberia's unheated warehouse. According to Block, whose testimony was accepted by Supreme Court,

Prismo refused to accept return of the tape unless Iberia agreed to repurchase it in the spring, which Freire refused to do. Nevertheless, Freire shipped the tape back to Prismo, but because the shipment arrived between Christmas and New Year's Day, when the plant was closed, it was returned to plaintiff's warehouse. Block explained that when the tape was examined, much of it was found to be unsalable, either because the boxes had been damaged or because it had been cut up for use on the Expressway project. Of the balance, plaintiff sold as much as possible but $25,000 worth of tape remained in the warehouse in 1987, at which time it was out of date and had to be destroyed.

Plaintiff thereafter commenced this action for damages incurred as a result of defendants' refusal to pay for the tape. During the nonjury trial, plaintiff amended the ad damnum clause of the complaint to encompass only the value of the tape admittedly used by Iberia ($6,957) and that which was discarded in 1987 ($25,000). After trial, Supreme Court found in plaintiff's favor, awarding judgment in the amount of $31,957 plus interest and costs. Iberia appeals.

Iberia's contention that it was merely a guarantor of TIJ's debt, and therefore that the Statute of Frauds renders its promise to pay unenforceable (see, General Obligations Law § 5-701 [a] [2]), was properly rejected. The evidence establishes that Freire agreed to assume primary responsibility for payment of the invoice issued to Iberia, not merely to guarantee payment of TIJ's alleged debt.

Supreme Court's holding in this regard is supported by Block's testimony that Freire agreed to have the account put in Iberia's name, as well as by Iberia's acceptance of the invoice for the full amount, both of which indicate an understanding that plaintiff would look first to Iberia for payment and pay TIJ its commission from the amount received. Further support is found in Block's testimony that Freire never suggested, during the course of several telephone conversations in which Block repeatedly requested payment, that he first seek payment from TIJ, but rather assured Block that he would be paid as soon as possible.

Moreover, although there is no evidence that plaintiff entered into a contract for the sale of the goods at issue to TIJ, by virtue of which TIJ would have become indebted to plaintiff even if TIJ did incur such an obligation, the record nevertheless supports a finding that Iberia's promise to pay, which was clearly made to induce plaintiff to ship the goods

for Iberia's use, and was therefore supported by new consideration flowing primarily to Iberia, constituted a new, independent contract between plaintiff and Iberia, thus taking it outside the scope of General Obligations Law § 5-701 *(see, Martin Roofing v Goldstein,* 60 NY2d 262, 265, *cert denied* 466 US 905; *White v Rintoul,* 108 NY 222, 227). This oral contract became binding on Iberia when it failed to object to the terms of the confirmatory written invoice sent by plaintiff *(see,* UCC 2-201 [2]).

Iberia also maintains that Supreme Court erred in finding that defendants did not establish, by a preponderance of the credible evidence, that the tape was latently defective, thus providing justification for their revocation of the contract after acceptance of the goods *(see,* UCC 2-608). We disagree. Freire's admission that he continued to use the tape on the Expressway project for 18 days, and only ceased doing so when the job was stopped by a State inspector due to the cold weather, coupled with Block's testimony that no defect was mentioned at the December 19, 1985 meeting, provides sufficient basis for Supreme Court's refusal to credit Freire's claims that the tape did not adhere properly to the road surface and was therefore worthless. There being no other evidence, apart from the self-serving statements contained in the November 1985 letters, that the tape was actually defective, it cannot be said that Supreme Court's findings in this respect were "against the weight of the *credible* evidence" *(Trode v Omnetics, Inc.,* 106 AD2d 808 [emphasis supplied]).

Iberia also urges that the amount of the judgment was improperly calculated, insofar as it included sums intended to be paid to TIJ as commission or profit on the sale. The contract between plaintiff and Iberia, as confirmed by plaintiff's invoice, provided that Iberia was to pay the entire $105,600 to plaintiff, which would then remit the commission to TIJ. Hence, if the damage award does include those commissions—the record is somewhat unclear in this regard—it cannot be considered improper as against Iberia, for it accurately reflects Iberia's obligation under the terms of the contract. And to the extent that TIJ may be entitled to such a reduction, it cannot be granted for TIJ has not appealed.

Cardona, P. J., Crew III, Casey and Weiss, JJ., concur. Ordered that the judgment is affirmed, with costs.