■ Carey & Associates, Appellant, v Rudi Ernst, Jr., Respondent, et al., Defendants. [810 NYS2d 475]—

Order, Supreme Court, New York County (Leland DeGrasse, J.), entered on or about March 26, 2004, which, to the extent appealed from as limited by the briefs, granted defendants' cross motion to the extent of dismissing the fourth cause of action against defendant Rudi Ernst, Jr., unanimously affirmed, without costs.

In December 1997, plaintiff law firm was retained by defendants Rudolf and Angelika Ernst (the Ernsts) to represent Rudolf in an extradition proceeding brought by the Swiss government. The matter was litigated in United States District Court for the Southern District of New York. The retainer agreement was signed by the Ernsts, obligating both of them to pay plaintiff's fees. The agreement also was signed by the Ernsts' son, Rudi, Jr., as "Depositor," to reflect Rudi, Jr.'s deposit of $50,000 into an advance account on his parents' behalf. The retainer agreement authorized the firm to draw on that advance account to cover any unpaid legal bills, and further authorized it to seek to withdraw as counsel if its bills were not paid.

In June 1998, the Ernsts stopped paying the firm's bills. The firm contacted Rudi, Jr., who earned a substantial salary as an ABC Television executive, and asked for payment. According to the firm's principal, Michael Carey, Esq., Rudi, Jr. was told that if payment on the outstanding bills was not forthcoming, the firm would move to withdraw as counsel for Rudolf. Carey states that Rudi, Jr. responded that he wanted the firm to continue as counsel until after Rudolf's extradition hearing and that he would obtain the necessary funds by mortgaging a property he owned in Virginia. Rudi, Jr. admits that the firm asked him to pay the bills, but denies that he promised to pay them.

The firm represented Rudolf for approximately two more months, until either the extradition occurred or the firm's motion to withdraw was granted. At that time, the Ernsts had paid the firm $154,765.64 of the $227,039.78 billed under the agreement. Angelika testified at deposition that she and her husband failed to pay the balance owing because they "ran out of money."

The firm commenced the instant action for breach of the retainer agreement, seeking the unpaid balance plus collection costs. The first three causes of action sought recovery from the Ernsts on theories of breach of contract, quantum meruit and account stated. The fourth cause of action alleged that Rudi, Jr. breached his oral promise to Carey to pay the sums due under the retainer agreement. Defendants submitted a single answer denying any liability under the agreement and counterclaimed for breach of fiduciary duty and fraud with respect to the quality of the firm's representation.

The firm moved for summary judgment and dismissal of the defenses and counterclaims and defendants opposed and cross-moved to dismiss the quantum meruit (second) and oral promise (fourth) causes of action. Supreme Court granted the firm summary judgment on its first and third causes of action, but granted defendants' cross motion to the extent of dismissing the fourth cause of action against Rudi, Jr., finding his oral promise to pay his parents' debt unenforceable under the statute of frauds.

On appeal, the firm argues that because Rudi, Jr. made an independent promise to pay his parents' debt with the intent that he become primarily liable, the oral promise is enforceable under a recognized exception to the statute of frauds. We disagree. An oral promise to guarantee the debt of another is unenforceable pursuant to General Obligations Law § 5-701 (a) (2). However, under a long-standing exception to the statute, the promise need not be in writing if it is (1) supported by new consideration moving to the promisor and beneficial to him, and (2) the promisor has become in the intention of the parties a principal debtor primarily liable (*Martin Roofing v Goldstein*, 60 NY2d 262, 265-267 [1983], *cert denied* 466 US 905 [1984]).

The proponent of the oral agreement has the burden of producing evidence showing consideration moving to the promisor, here Rudi, Jr., and that it was the intention of the parties that Rudi, Jr. was to become primarily liable. The firm has failed on both counts. Although the firm identifies its continued representation of Rudolf as the new consideration flowing to Rudi, Jr., that continued representation only benefited Rudolf directly since he was the only one receiving legal services. Rudi, Jr. obtained no direct benefit from that representation other than his peace of mind that his father would not be without representation.

Courts have generally required that the new consideration be both tangible and directly beneficial to the promisor in order to satisfy this exception (*see Martin Roofing,* 60 NY2d at 266-267

[oral promise by former corporate officer to pay contractor for services provided to corporation not enforceable where benefit flowed only to corporation, not promisor personally]; *Gibbs v Holden*, 137 Misc 480, 483 [Sup Ct Tompkins County 1930], *affd* 237 App Div 862 [1932] [oral promise by father to pay plaintiff his damages if plaintiff would not prosecute son civilly or criminally unenforceable where intangible benefit to father was not legal consideration beneficial to him]; *Rosenman & Colin LLP v Sandler*, 2002 WL 83657, 2002 US Dist LEXIS 900 [SD NY 2002] [oral promise by partner to pay legal fees owed by partnership not enforceable where only indirect benefit to partner in form of firm's continued representation of partnership in bankruptcy proceeding]).

Nor did the firm produce evidence that the parties intended that Rudi, Jr. would become primarily liable, as opposed to acting as a surety for his parents' default. Although it is undisputed that the Ernsts did not have the funds to pay the bills and that Rudi, Jr. paid many of the firm's bills, such had been the case from the very beginning when Rudi, Jr. made the initial $50,000 deposit. Thus, contrary to the firm's suggestion, the Ernsts' inability to pay in June 1998 does not constitute evidence of a new agreement to make Rudi, Jr. primarily liable. Indeed, according to the agreement itself, the Ernsts' primary liability remained even if the bills were paid by someone else.

Nor is the part performance exception to the statute of frauds applicable in this case. An oral agreement may be enforceable despite the lack of writing where a plaintiff's part performance is "unequivocally referable" to that oral agreement (*Anostario v Vicinanzo*, 59 NY2d 662, 664 [1983]; *Lowinger v Lowinger*, 287 AD2d 39, 45 [2001], *lv denied* 98 NY2d 605 [2002]). Here, the firm's continued representation of Rudolf after threatening to withdraw was not "unequivocally referable" to an oral promise by Rudi, Jr. to pay his father's legal bills. While it is possible that the firm decided to continue its representation based on Rudi, Jr.'s oral promises to pay, there is an equally strong likelihood that such representation was continued because of payments totaling $81,000 made by the Ernsts at approximately the same time as the alleged oral promise by Rudi, Jr. Since more than one potential explanation for the firm's decision to continue its representation is supported by the facts, the part performance exception to the statute of frauds does not apply.

We reject the firm's additional arguments that a June 22, 1998 letter constitutes a writing sufficient to satisfy the statute of frauds and that Supreme Court's order was defective in failing to set forth the essential facts upon which it was based.

Concur—Friedman, J.P., Nardelli, Williams, Gonzalez and Sweeny, JJ.

Reargument granted and upon reargument, the decision and order of this Court entered herein on October 18, 2005 (22 AD3d 338 [2005]) is hereby recalled and vacated and a new decision and order substituted therefor.