OPINION OF THE COURT
Vito M. DeStefano, J.
In an action, inter alia, to recover damages for breach of contract, the defendants/third-party plaintiffs, New York State Urban Development Corporation, doing business as Empire State Development Corporation (UDC), and Dormitory Authority of the State of New York (DASNY), move for an order pursuant to CPLR 3212 granting them summary judgment dismissing the amended complaint of the plaintiff, Nassau County (motion sequence No. 23).
The County cross-moves for an order pursuant to CPLR 3212 granting it “summary judgment dismissing the first, second and third affirmative defenses” asserted in the answer of UDC and DASNY (motion sequence No. 24).
Factual Background
The instant action was commenced by the County to recover damages relating to the construction of the Nassau County Aquatic Center in Eisenhower Park, East Meadow, New York (the Aquatic Center or the project). The Aquatic Center project came about due to a New York State legislative appropriation of state funds to the UDC in the amount of $24 million for the development of the Aquatic Center. The Aquatic Center was built to “attract” the Goodwill Games; it began as a UDC eco *251 nomic development project and was authorized by statute and funded by grant monies in 1994. The UDC was charged with administering the state funds; DASNY was to provide technical support for the project.[1]
As early as 1994, DASNY was involved with assisting the UDC in the selection of design professionals and construction managers, namely, defendants Richard Dattner Architect RC. and Tishman Construction Corporation of New York.[2] DASNY’s representatives attended design meetings and worked with the UDC, the County, and the Goodwill Games representatives to ensure that the project and its appropriation would be implemented.
Ultimately, a plan was developed whereby separate construction contracts for various trades would be issued by DASNY, beginning in 1996, with construction expected to be complete at the end of 1997.[3]
At some point, the participants in the project determined that the Aquatic Center could not be built within the budget of $24 million that had been specifically appropriated by the legislature. As a result, the County proposed to pay for all costs of completion of the project in excess of the $24 million funding provided by the State. After- the revised cost estimate of the project increased to approximately $30 million, it was agreed that the County would deposit $6 million with the UDC, which would transfer this money, as needed, to DASNY to pay for project costs and expenses in excess of the $24 million. This solution for the funding shortfall was memorialized in a written agreement between the County and the UDC dated Febru *252 ary 1, 1996 (the UDC/County agreement).[4] DASNY was not a signatory to the UDC/County agreement.
On February 2, 1996, the UDC and DASNY entered into an agreement whereby the UDC and DASNY outlined their roles in connection with the project (the UDC/DASNY agreement). The UDC/DASNY agreement detailed the mutual understandings governing the UDC/DASNY relationship with respect to managing the planning, design and construction management of the project. It sets forth the oversight and contract administration functions to be exercised by DASNY, including handling payment for design and construction costs out of the appropriated funding. In addition, the UDC/DASNY agreement confirmed that DASNY’s construction management fee, to be paid from the state appropriated monies, would be fixed at $500,000.
Construction on the project began in 1996 and was completed in 1998. The Aquatic Center opened for special use on March 23, 1998, hosted the Goodwill Games in the summer of 1998, and opened to the general public in the fall of 1998.
Subsequently, ductwork at the project became corroded. The County alleges, inter alia, that a poor, defective or negligent design resulted in the hardware sections of the ductwork, and the ductwork system, to fail without warning. It further alleges that the design also caused: the stainless steel support wire, which held the light fixtures over the pool in place, to fail; the eyebolts to corrode and fail; and excessive condensation between the metal roof deck and the ceiling tiles, damaging the insulation and all other related roof/ceiling materials.
Procedural History
The County commenced this action on February 27, 2004. On September 20, 2010, the County amended its complaint. In its amended complaint, the County asserted claims against the *253 UDC for breach of contract, negligent misrepresentation and specific performance and as against DASNY, Dattner, Tishman, Molina and Counsilman, claims for breach of contract and negligent misrepresentation (exhibit E to motion).
In their answer, the UDC and DASNY denied most of the allegations in the amended complaint and asserted various affirmative defenses (exhibit F to motion ¶¶ 170-172).
On August 27, 2012, the County and the UDC entered into a stipulation whereby the County “withdrew” the third and fourth causes of action asserted against the UDC (exhibit M to motion).[5] In addition, the County “agreed to voluntarily discontinue its negligent misrepresentation claims against the State [which it identifies in its motion papers as both the UDC and DASNY] and is negotiating a proposed Stipulation with counsel for the State” (mem of law in opposition to motion at 2, n 3).[6]
Thus, the instant motion for summary judgment made by the UDC and DASNY concerns dismissal of only the first and fifth causes of action for breach of contract against the UDC and DASNY, respectively. In the first cause of action, the County alleges that the
“[UDC] has failed to perform all of its obligations under the [UDC]/Nassau County Agreement by failing to provide the County with a ‘world class’Aquatics Center that was adequately and properly designed, and built in a good and workmanlike manner, free of design or construction defects, errors or omissions . . . .”
In the fifth cause of action, the County alleges that
“DASNY is in breach of its contractual obligations to the County as a third-party beneficiary of the [UDC]/DASNY Agreement by, among other things, failing to ensure that a ‘world class’Aquatics Center was adequately and properly designed, and was built for the County in a good and workmanlike manner, free of design or construction defects, errors or omissions” (exhibit E to motion ¶¶ 100, 121).
*254 The County cross-moves for partial summary judgment dismissing the first, second and third affirmative defenses asserted in the UDC/DASNY answer. Those affirmative defenses are: failure to state a cause of action, failure to commence this action within the applicable statute of limitations, and that the UDC/County agreement is void and unenforceable for lack of consideration (exhibit F to motion ¶¶ 170-172).
The Court’s Determination
The UDC and DASNY argue that the breach of contract causes of action asserted against them should be dismissed on three independent grounds. It is the UDC’s position that the County has failed to state a cause of action against it and that the agreement between it and the County lacks consideration. It is DASNY’s position that the County has failed to state a cause of action against it as the County is not an intended third-party beneficiary of the agreement between UDC and DASNY. Both the UDC and DASNY maintain that the breach of contract actions are untimely as substantial completion of the project occurred more than six years prior to the commencement of the action.[7]
UDC’s Motion — Lack of Consideration
In order for a contract to be binding and enforceable, there must be valid consideration (Umscheid v Simnacher, 106 AD2d 380 [2d Dept 1984]). “Consideration may take the form of either a promise or performance, [and] has been said to consist of what is actually given or suffered and accepted for a promise. It is, in effect, the price bargained and paid for a promise” (22 NY Jur 2d, Contracts § 60).
“Since a promise is a good consideration for a promise, mutual promises are generally held to be sufficient consideration for each other.
“Mutual promises on the part of both parties to a contract constitute sufficient consideration for the agreement, where each party undertakes some act *255 or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee” (22 NY Jur 2d, Contracts § 80; Weiner v McGraw-Hill, Inc., 57 NY2d 458, 464 [1982]).
“The essence of consideration is a legal detriment that has been bargained for and exchanged for the promise. In short, the detriment must induce the promise” (Umscheid v Simnacher, 106 AD2d at 381).
UDC and DASNY argue that the design and building of the Aquatic Center was the result of a legislative appropriation and not the result of a bargained for contract between the County and the UDC. Notably, the UDC/County agreement dated February 1, 1996 does not contain or recite any consideration given on the part of the County in connection with the Aquatic Center project. The agreement merely sets forth the governmental purposes of the project and the County’s obligation to the UDC to pay any overrun above the $24 million that the State appropriated to the UDC as a grant to the County to build the Aquatic Center (affirmation in support of motion ¶ 30).
Conversely, the County argues that because the “State of New York” received an economic benefit from the project, that the economic benefit to the state as a whole was consideration to support the UDC/County agreement.
The County’s argument is without merit.
First, the UDC and DASNY are public benefit corporations of the State of New York and not the State itself. The UDC and DASNY are creatures of statute (Bordeleau v State of New York, 18 NY3d 305, 312 and n 1 [2011], citing McKinney’s Uncons Laws of NY § 6254).[8] Given the independent and autonomous nature of the UDC and DASNY (see e.g. John Grace & Co. v State Univ. Constr. Fund, 44 NY2d 84 [1978]; Matter of Plumbing, Heating, Piping & A.C. Contrs. Assn. v New York State Thruway Auth., 5 NY2d 420, 423 [1959]), the court concludes that a benefit affecting the State of New York is not the equivalent of a benefit to the UDC.
*256 The County also argues that “because the State has admitted that ‘the Aquatic Center project benefitted the surrounding community and State’ which is also the mission of the UDC, this benefit to the State is sufficient consideration of the County/[UDC] Agreement” (mem in reply at 8). The mission of the UDC — advancing the economic development in New York State — cannot in and of itself constitute a benefit to the UDC such that the benefit would constitute valid consideration for a contract between the UDC and the County. In this regard, a remote or indirect benefit to the promisor is insufficient consideration for a contract (Trans Intl. Corp. v Clear View Tech., 278 AD2d 1 [1st Dept 2000]; see Martin Roofing v Goldstein, 60 NY2d 262, 267-268 [1983], cert denied 466 US 905 [1984]).
To the extent that the County argues that the UDC/County agreement contained numerous mutual obligations that constituted consideration, the UDC, nevertheless, did not benefit from the agreement nor did the agreement contain any obligations that it was not already required to do by statute. Significantly, by meeting its limited delineated obligations under the agreement, the UDC did nothing more than fulfill its statutory mandate to cause the $24 million grant to build the project to be spent in accordance with the legislative mandate. Moreover, no obligations were set forth in the agreement — and no promise was made by the UDC — which would give rise to a claim by the County that the UDC had failed to “provide the County with a ‘world class’ Aquatics Center that was adequately and properly designed, and built in a good and workmanlike manner, free of design or construction defects, errors or omissions.” Indeed, the agreement contains no such promise by the UDC.
In addition, the County’s claims that its donation of parkland, the completion of the site work, its promise and payment of funds for the excess cost of the project, and that the DASNY was “allowed” by the County to be the code-permitting agency for the project, constituted “consideration” for the UDC/County agreement, are without merit (mem of law in opposition at 18).
Regarding the County’s donation of parkland, the decision by the County to donate the parkland for the Aquatic Center took place prior to the execution of the UDC/County agreement in 1996. Moreover, the County’s donation of parkland was a result of compliance with the statutes and not the result of any bargained for exchange between it and the UDC. The 1994 *257 statute regarding the Aquatic Center project required the approval of a general project plan, which was approved by the UDC Directors on or about September 21, 1994 (exhibit S to motion). The general project plan indicates that the location of the project will be in Nassau County’s Eisenhower Park and that DASNY would be the code-permitting agency. The general project plan, to build an “indoor permanent aquatic facility for Olympic caliber swimming and diving competitions as well as recreational use,” was being considered in 1994 by the UDC pursuant to the grant authorization statute, as well as other statutes governing the UDC administration of grants to municipalities for development projects. At that time, in 1994, there was no agreement in existence between Nassau County and the UDC concerning the project. As such, the donation of the parkland was a decision that occurred prior to the execution of the UDC/County agreement in 1996 (exhibit S to motion at 1, 3).
Similarly, the fact that the County “allowed” DASNY to be the code compliance agency for the project does not constitute consideration inasmuch as the decision to give DASNY that role also occurred prior to the execution of the UDC/County agreement in 1996. The court notes the minutes of the project design meeting No. 1, held on November 1, 1994, which provide that “DASNY will permit the project, and will oversee review by local authorities” (exhibit U to motion at 2, item 11). The general project plan (which was approved in 1994) also indicated that DASNY would be the code-permitting agency (exhibit S to motion).
The County’s argument that abdication of authority on its part constitutes valid past consideration is also misplaced. Pursuant to General Obligations Law § 5-1105,
“[a] promise made in writing and signed by the promisor or by his [or her] agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed.”
With respect to past consideration, the Second Department in Umscheid v Simnacher (106 AD2d 380, 381 [2d Dept 1984] [citations omitted]) stated the following:
*258 “in order for a promise to be enforceable as a contract, the promise must be supported by valid consideration .... The essence of consideration is a legal detriment that has been bargained for and exchanged for the promise. In short, the detriment must induce the promise ....
“The general rule is that past consideration is not consideration .... A promise supported by past consideration is unenforceable because the detriment did not induce the promise. That is, ‘since the detriment had already been incurred, it cannot be said to have been bargained for in exchange for the promise.’
“New York law, however, provides otherwise under certain circumstances. Section 5-1105 of the General Obligations Law states that ‘[a] promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed.’
“To be enforceable pursuant to section 5-1105 of the General Obligations Law, the writing must contain an unequivocal promise to pay a sum certain, at a date certain, and must express consideration for the promise.
“In our view, the writings relied upon by the petitioner do not contain an unequivocal promise to pay a sum certain at a date certain. Moreover, the consideration was not ‘expressed’ within the meaning of section 5-1105. The consideration alluded to in the documents, viz., services rendered on the respondent’s behalf, is vague, imprecise, and, indeed, is without meaning. In short, resort to evidence extrinsic to the documents is necessary to give meaning to the consideration ‘expressed’ in those documents.”
The UDC/County agreement states:
“Whereas, pursuant to Chapter 64 of the laws of 1994, the New York State Legislature has appropriated the sum of Twenty Four Million Dollars ($24,000,000) (the ‘Appropriation’) to [Empire State
*259 Development Corporation (ESDC)][9] for services and expenses associated with the construction of a natatorium in Nassau County, New York (the ‘Natatorium’ or the ‘Project’); and “Whereas, on September 20, 1994, the ESDC Directors made project findings and adopted a General Project Plan for the Natatorium Civic Project and on October 20, 1994 the ESDC Directors affirmed the General Project Plan and authorized the expenditure of an amount not to exceed the Appropriation in furtherance of the Project; and “Whereas, on September 13, 1995 the Project was approved by the Public Authorities Control Board; and
“Whereas, the Natatorium will the [sic] be the venue for swimming and diving events for the Goodwill Games scheduled for 1998; will be suitable for other national and world class competitions and will serve as a recreational facility for the benefit of the residents of the County; and “Whereas, the County has requested that ESDC proceed with the Project and the County Board of Supervisors has authorized the County to enter into this agreement in furtherance thereof; . . . “III. COUNTY WORK
“The County agrees to provide certain services and improvements to ESDC to assist the development of the Project. The County shall relocate existing water and sewer mains on the Premises and shall ensure that adequate water, sewer and other infrastructure and utilities necessary for the construction and operation of the Natatorium are provided to the Premises. The County shall be responsible for the provision of exterior lighting, service roads and landscaping on the Premises but shall not be responsible for the provision of primary electric service from Merrick Avenue to the Premises. The County shall fully cooperate with ESDC and DASNY in the planning, timing and implementation of the above services. . . .
“IX. BUILDING PERMITS
“ESDC and the County agree that it is beneficial to have DASNY serve as the permitting agency for *260 the Project. The County shall authorize DASNY to issue all necessary permits, certificates of occupancy and related code enforcement documents for the Project as may be required by Federal, State or Local statute or regulation. . . .
“XII. OWNERSHIP & OPERATIONS
“The County represents to ESDC that the Premises is situated on dedicated parkland owned by the County. The County and ESDC agree that the the [sic] Natatorium and Premise, at all times shall be owned by the County. . . .
“XIII. TERMINATION
“In the event ESDC determines that the Project can not be completed with the remaining funds in the Project budget, or that other events have made completion of the Project undesirable or contrary to the purposes of the State of New York, ESDC, at its sole option, may terminate this Agreement upon notice to the County and, upon such termination, ESDC shall not be liable, in any respect whatsoever, for any damages suffered or costs incurred by the County. Notwithstanding the foregoing, provided that the County has fulfilled all its obligations under this Agreement, including the funding of any Cost Overruns, in the event that ESDC exercises its discretionary right to terminate the Project, it shall be obligated to the County to restore the Premises to its original condition at its sole cost and expense.”
Essentially, to constitute valid legal past consideration, the writing must refer to the consideration, albeit for past services, and couple that recitation with the promise to pay (Sarama v John Mee, Inc., 102 Misc 2d 132 [Civ Ct, NY County 1979]). Conversely, something that had been given before a promise was made, and therefore without reference to it, is not by itself legal consideration for the promise (Pershall v Elliott, 249 NY 183 [1928]; see also Raymond Babtkis Assoc. v Tarazi Realty Corp., 36 AD2d 694 [1st Dept 1971]).
Here, while it is undisputed that DASNY served as the code-permitting agency on the project, there is no evidence that the County’s abdication[10] of its code-compliance authority was *261 intended to be consideration for a future promise to the UDC.[11] That is, the County’s forbearing of a legal right — the abdication of its code-compliance authority — was not done upon the express or implied request of the UDC such that this court can now properly imply a promise to the UDC supported by valid past consideration.
Nor does the County’s performance of site work or the provision of funds in excess of the $24 million constitute elements of consideration supporting the UDC/County agreement. Although it is undisputed that the County contributed these items to the project, these contributions did not confer “a benefit to the promisor.” There is no evidence that the UDC received anything quid pro quo for these contributions by the County. Indeed, the UDC was never compensated for its work on the project by either the $24 million grant or the excess funds contributed by the County. In addition, the actions or “promises” by the County were nothing more than compliance with the statutory mandates to build the project.
Accordingly, the UDC’s actions in connection with the design and construction of the Aquatic Center were performed as a result of its statutory duty to implement the State of New York’s grant of $24 million appropriated for the Aquatic Center project in 1994 and were not the result of a bargained for legal detriment that has been exchanged for a promise (see Umscheid v Simnacher, 106 AD2d at 382-383). Thus, in the absence of any enforceable promise to provide a “world class natatorium,” and there being no consideration to support the agreement between the County and the UDC, that branch of the motion seeking summary judgment on the third affirmative defense dismissing the County’s breach of contract claim against the UDC (the first cause of action), is granted and that branch of the County’s cross motion for summary judgment dismissing the third affirmative defense is denied.
Third-Party Beneficiary of the UDC/DASNY Agreement
In the fifth cause of action, the County alleges that “DASNY is in breach of its contractual obligations to the County as a third-party beneficiary of the [UDC/DASNY] Agreement by, among other things, failing to ensure that a ‘world class’Aquat *262 ics Center was adequately and property designed . . . (Exhibit E to motion ¶ 121.)
To the extent that the County bases its breach of contract action against DASNY on an allegation that it is a third-party beneficiary of the agreement between the UDC and DASNY, the UDC/DASNY agreement provides, in relevant part, as follows:
“WHEREAS, [DASNY] and [UDC] are authorized by law to enter into agreements pursuant to which [UDC] may delegate to [DASNY] its responsibility to manage the planning, design and construction of capital projects; and
“WHEREAS, [UDC] desires that [DASNY] manage the planning, design and construction of the Natatorium Civic Project located in East Meadow, New York (the ‘Project’); and
“WHEREAS, [DASNY] desires to provide for the management of the planning, design and construction of the Project; and
“WHEREAS, the construction of the Project will benefit the community it is to be located in by providing economic benefits to the community, and to the State; and
“WHEREAS, [DASNY] and [UDC] desire to define each of their rights and responsibilities with respect to the planning, design and construction phases of the Project;
“NOW, THEREFORE, in consideration of these premises [sic], the parties do hereby agree as follows:
“I. Purpose
“The purpose of this Agreement is to set forth the mutual understandings between [DASNY] and [UDC] and the principles which will govern the relationship between [DASNY] and [UDC] with respect to the design and construction management of the Project. . . .

“[DASNY] shall manage the planning, design, and construction of the project. Such management shall commence upon execution of this Agreement.

“[T]he UDC would pay $500,000 to DASNY as a construction management fee” (UDC/DASNY agreement at 1, 10 [emphasis added]).
*263 The expressly stated intention of the UDC/DASNY agreement is to benefit the “community” and “the State.” That the agreement does not explicitly name the County as a beneficiary thereof, is not dispositive, however. In this regard, the court concludes that “community,” in the sense that it is used in the agreement, refers to the County. To hold otherwise, and to accept the movants’ argument, would render meaningless the agreement’s reference to “community,” defy the nature of the project itself, ignore that the County was expressly understood to be the owner of the project site, and otherwise impermissibly and illogically expand the class of potential plaintiffs to any resident of Nassau County and possibly to any visitor to the Natatorium. The court notes the relevant rules regarding the interpretation of contracts: “In interpreting a contract, the intent of the parties governs .... A contract should be construed so as to give full meaning and effect to all of its provisions .... Words and phrases are given their plain meaning” (American Express Bank v Uniroyal, Inc., 164 AD2d 275, 277 [1st Dept 1990]). The court concludes that such an absurd result, which would be required to accord the word “community” any meaning other than as referring to the County, was not intended by the parties (see e.g. Moch Co. v Rensselaer Water Co., 247 NY 160 [1928]).
In Moch Co. v Rensselaer Water Co., the Court of Appeals rejected an attempt by the plaintiff (whose warehouse suffered extensive fire damage) to sue a waterworks company for failing to provide sufficient water (to douse the fire) on the theory that plaintiff was a third-party beneficiary of the contract between the company and the city. In so holding, the Court held as follows (247 NY at 164-165):
“In a broad sense it is true that every city contract, not improvident or wasteful, is for the benefit of the public. More than this, however, must be shown to give a right of action to a member of the public not formally a party. The benefit, as it is sometimes said, must be one that is not merely incidental and secondary . . . . It must be primary and immediate in such a sense and to such a degree as to bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost. The field of obligation would be expanded beyond reasonable limits if less than this were to be demanded as a condition of liability. . .
*264 “[Thus,] a contract between a city and a water . company to furnish water at the city hydrants has in view a benefit to the public that is incidental rather than immediate, an assumption of duty to the city and not to its inhabitants.”
In view of the foregoing and upon a review of the UDC/ DASNY agreement, it is evident that there was no intent to confer a right of action upon individual members of the community in the event of a breach by DASNY of its obligations thereunder. Rather, the agreement confers managerial obligations upon DASNY in connection with the design, planning and construction of the project, recites consideration of $500,000 to be paid by the UDC for DASNYs performance of its obligations, upon the completion of which a natatorium would be constructed which would be owned and maintained by Nassau County. That DASNY and the UDC invited the County to approve of value added engineering changes underscores the parties’ implicit acknowledgment that the County was a potential plaintiff in the event of some actionable defect. Moreover, it cannot be ignored that the County owned the land on which the Natatorium was to be built, and the Natatorium itself, and was responsible for paying any monies required for construction above the $24 million contributed by the State. It is the County, therefore, and not its residents, which bears the burden of addressing problems arising after construction; it is the County — and not its residents — which is responsible for the maintenance and repair of the Natatorium. All of these facts were known by DASNY and the UDC at the time they entered into contract. Indeed, there can be no other conclusion except that both parties intended the County to be a third-party beneficiary of their agreement.
Accordingly, the branch of the motion for summary judgment dismissing the County’s breach of contract action against DASNY on the ground that it fails to state a cause of action is denied; the branch of the County’s cross motion seeking summary judgment dismissing the first affirmative defense is also denied (see Mazzei v Kyriacou, 98 AD3d 1088 [2d Dept 2012] [motion to dismiss defense of failure to state a cause of action does not lie]).
Statute of Limitations
The UDC and DASNY argue that, by the County’s own allegations, “[t]he Project was completed in or about March of 1998” and that based upon this claim, it is logical to infer that *265 substantial completion occurred prior to March 1998. They further argue that, based upon the testimony of DASNY’s project manager, John V. Andrus, that substantial completion had occurred by February 3, 1998, the six-year statute of limitations for breach of contract actions in connection with this project expired on February 3, 2004 (affirmation in support ¶¶ 34, 35). The action, according to the UDC and DASNY, having been commenced on February 27, 2004, is, therefore, untimely. The County, relying, in part, on a “Code Compliance Certificate” issued by DASNY, which indicates “physical completion dates” by various trades of March 13, 1998, and other statements/ documents referencing anticipated dates of completion, argues, in contrast, that the action is timely.
The statute of limitations for breach of contract is six years (CPLR 213). With construction contracts, a cause of action for breach of contract accrues upon substantial completion of the work (Superb Gen. Contr. Co. v City of New York, 39 AD3d 204 [1st Dept 2007], citing Phillips Constr. Co. v City of New York, 61 NY2d 949 [1984]; State of New York v Lundin, 60 NY2d 987 [1983]). Remedial work does not extend the accrual date of a breach of contract claim (Barnard Coll. v Tishman Constr. Corp. of N.Y., 261 AD2d 193 [1st Dept 1999]; see also Cabrini Med. Ctr. v Desina, 64 NY2d 1059 [1985], citing Phillips Constr. Co. v City of New York, 61 NY2d 949, supra).
In order for the County’s breach of contract claims against the UDC and DASNY to be timely, the project must have been “substantially completed” after February 27, 1998. In consideration of the submissions of the parties on this point, there is a question of fact as to the action’s timeliness — the testimony and evidence proffered by the UDC and DASNY, and the documentary and other evidence submitted by the County, being inconclusive. As such, the motion to dismiss the complaint based on the affirmative defense of statute of limitations is denied as is the cross motion for summary judgment seeking dismissal of the statute of limitations defense.
Conclusion
Accordingly, it is ordered that the motion by New York State Urban Development Corporation, doing business as Empire State Development Corporation, and Dormitory Authority of the State of New York for summary judgment dismissing the amended complaint of the plaintiff, Nassau County, is granted to the extent that the first cause of action in the complaint as *266 serted against Empire State Development Corporation is dismissed, and the motion is otherwise denied; and it is further ordered that Nassau County’s cross motion for summary judgment dismissing the first, second and third affirmative defenses in the answer of New York State Urban Development Corporation, doing business as Empire State Development Corporation, and Dormitory Authority of the State of New York is denied.

. UDC and DASNY are public benefit corporations created by statute.

. Tishman was retained to provide contract management. Dattner was retained to provide architectural services. Dattner, in turn, retained six consultants for additional professional services, including, inter alia, defendant Mariano D. Molina P.C. (engineering services for the heating, ventilation and air conditioning [HVAC] requirements of the project) and defendant Counsilman Hunsaker & Associates (design services in connection with the swimming pool).

. DASNY entered into five construction contracts for the project. Third-party defendant Roy Kay, Inc. was retained to install the HVAC system; third-party defendant Anron Heating and Air Conditioning, Inc. was retained to manufacture and install the ductwork; third-party defendant Stonewall Contracting Corp. was retained as the general contractor; Hatzel & Buehler, Inc. was retained to furnish the electrical work; and third-party defendant Norberto & Sons, Inc. was retained to construct the pool.

. The UDC/County agreement also specifically provided that
“[UDC] has entered, or shall enter, into an agreement with the Dormitory Authority of the State of New York (‘DASNY’) that will cause DASNY to provide certain management and planning services to [UDC] with respect to the development of the Project, including the letting of construction contracts and the provision of day to day oversight for the Project. [UDC] and DASNY have entered into a Memorandum of Understanding, a copy of which has been provided to the County, outlining the responsibilities of each party with respect to the Project. The County has consented to DASNY’s participation in the Project as set forth therein.”

. The third cause of action asserted against the UDC was for specific performance. The fourth cause of action asserted that the UDC was in breach of its contractual obligations by failing to return excess funds to the County.

. Counsel for UDC and DASNY similarly represents that the parties are in the process of preparing a stipulation of discontinuance as to the second and sixth causes of action for negligent misrepresentation (reply affirmation in support of motion ¶ 3).

. The court has reviewed the complaint and has determined that it does state a cause of action for breach of contract against DASNY on a third-party beneficiary theory, which thereby requires denial of DASNY’s motion to dismiss pursuant to CPLR 3212 on the ground of failure to state a cause of action. The court notes that the parties, without objection, have submitted evidentiary materials on their summary judgment motions addressing the defense of failure to state a cause of action. Assuming, arguendo, that the court were permitted to consider such evidentiary materials, the result reached herein would be the same.

. Section 6254 (1) of McKinney’s Unconsolidated Laws of NY states in relevant part as follows: “There is hereby created the New York state urban development corporation [UDC]. The corporation shall be a corporate governmental agency of the state, constituting a political subdivision and public benefit corporation.”
Similarly, Public Authorities Law § 1677 created the DASNY as a public benefit corporation. It states, in relevant part, as follows: “A board, to be known as the ‘Dormitory Authority,’ is hereby created. Such board shall be a body corporate and politic constituting a public benefit corporation.”

9. The ESDC is a doing business as name for the UDC.

. The County argues that one of its obligations under the UDC/County agreement was to “abdicate it[s] usual code permitting role and allow DASNY *261 to be the code permitting agency on the project” (mem of law in opposition to motion at 18).

. See Halliwell v Gordon (61 AD3d 932, 934 [2d Dept 2009]) where the court stated that the “forbearance to do an act that a person has a legal right to do constitutes consideration.”