25-331(L)
*AlSayer v. OmniX Labs, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11ᵗʰ day of March, two thousand twenty-six.

PRESENT:
> REENA RAGGI,
> MYRNA PÉREZ,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

---

MUTHLA ALSAYER,

> *Plaintiff-Appellee-Cross-Appellant,*

v.

OMNIX LABS, INC.,

> *Defendant-Appellant-Cross-Appellee.*

---

Nos. 25-331 (L),
25-461 (XAP)

1

FOR PLAINTIFF-APPELLEE-
CROSS-APPELLANT:

Kenneth J. Rubinstein, Cohen Tauber Spievack & Wagner P.C., New York, NY

FOR DEFENDANT-APPELLANT-
CROSS-APPELLEE:

Gavin P. Lentz, Albert M. Belmont III, Bochetto & Lentz, P.C., Philadelphia, PA

Appeal from a judgment of the United States District Court for the Southern District of New York (Liman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-Appellee-Cross-Appellant Muthla AlSayer sued Defendant-Appellant-Cross-Appellee OmniX Labs, Inc. ("OmniX") in relation to a loan received from the Kuwait National Fund ("KNF"), which she guaranteed. AlSayer claimed that OmniX orally or impliedly agreed to bear responsibility for the loan. After a bench trial, the District Court found that OmniX made an implied agreement with AlSayer regarding the loan and issued a declaratory judgment that OmniX is liable for AlSayer's obligations related to the KNF loan. *See AlSayer v. OmniX Labs, Inc.*, 22-cv-2628 (LJL), 2025 WL 100899, at \*14 (S.D.N.Y. Jan. 15, 2025). The District Court dismissed the remainder of AlSayer's claims. *Id.* at \*14–15. OmniX appealed the declaratory judgment on the implied agreement claim, and AlSayer appealed the dismissal of her claim for indemnification.

2

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision.

## I.    Background

AlSayer is a Kuwaiti citizen.  She and Anoop Kanthan formed OmniX.[1]  AlSayer was OmniX's CEO and held a 60% interest.  Kanthan was the COO and held a 40% interest.  AlSayer and Kanthan needed funding for the business, and they turned to the KNF, which dispersed loans to small and medium-sized businesses owned by Kuwait citizens.  To be eligible for a KNF loan, the business also had to be based in Kuwait and have a Kuwait bank account.  Having recently incorporated OmniX in Delaware, AlSayer formed a separate Kuwaiti sole proprietorship named Tags Lab General Trading Company ("Tags Lab").  Tags Lab had no formal or documented connection with OmniX, and it lacked any assets.

AlSayer signed a Loan Agreement with KNF, which stated that she was the "Second Party" to the contract "in her capacity as the manager of, sole partner in and authorized signatory for [Tags Lab]."  J. App'x at 482–93 ("Loan Agreement").  AlSayer also signed a "Debt Declaration + Surety" document in connection with the loan, which states that "she is a joint surety with [Tags Lab]" and that she would pay the debt to KNF "in case the debtor fails to fulfil and pay it."  Id. at 494–98 ("Surety Document").[2]

---

[1]    The company was originally called TagXLabs.  To avoid confusion, we refer to the company, the Defendant-Appellant-Cross-Appellee in this action, as OmniX throughout.

[2]    Both the Loan Agreement and the Surety Document were originally drafted in Arabic.  The parties

3

Later, AlSayer stepped down as CEO, and Kanthan sold OmniX. AlSayer reminded Kanthan during this time of her "personal obligation to KNF" and her view that OmniX had "responsibility for this debt." J. App'x at 73. AlSayer sued, claiming that OmniX agreed to bear responsibility for the KNF loan. She brought claims for breach of oral agreement, breach of implied agreement, unjust enrichment, indemnification, and declaratory judgment.

After a bench trial, the District Court issued a declaratory judgment that OmniX made an implied agreement with AlSayer to cover the KNF loan and dismissed the remainder of AlSayer's claims. Both parties appealed. OmniX argues that the statute of frauds renders any implied agreement between OmniX and AlSayer unenforceable. AlSayer argues that the District Court wrongly dismissed her claim for indemnification. Neither appeal has merit.

## II.    Application of Statute of Frauds to Implied Agreement

On appeal, OmniX does not dispute the District Court's finding of an implied agreement between OmniX and AlSayer for the former to pay off the KNF loan.[3] Instead, OmniX solely contends that any such agreement is unenforceable per N.Y. General Obligations Law § 5-701(a), which provides that an agreement not in writing is void if it "[i]s a special promise to answer for the debt, default or miscarriage of another person."

provided English translations at trial and in the record before this Court.

[3]    For good measure, we agree that the evidence establishes that OmniX made an implied agreement to pay the KNF Loan.

4

*Id.* § 5-701(a)(2).  According to OmniX, the agreement between it and AlSayer is an agreement "to answer for the debt . . . of another person" because OmniX agreed to pay for *Tags Lab's* debt to KNF under the Loan Agreement, not AlSayer's debt. *Id.*  At base, OmniX's theory relies on the notion that AlSayer is not personally and directly liable under the Loan Agreement.

But the implied agreement between OmniX and AlSayer is an agreement to cover AlSayer's obligations generally, not the specific obligations governed by the Loan Agreement.  Indeed, "[t]he implied contract was simply that if AlSayer signed for the loan, OmniX would be *ultimately* responsible for it." *AlSayer*, 2025 WL 100899, at \*14 n.16 (emphasis added).

Thus, it does not matter whether the Loan Agreement binds Tags Lab alone, or whether it also binds AlSayer.[4]  AlSayer also signed the Surety Document in her individual capacity. *See* J. App'x at 494–98.  Pursuant to the Surety Document, AlSayer must pay the debt in the event Tags Lab cannot.[5]  Therefore, OmniX's implied agreement to bear ultimate responsibility for the KNF loan is an agreement to pay AlSayer's debt, not the debt of a third party.  Because OmniX's agreement is with the "debtor, [OmniX]

---

[4]      At summary judgment, the District Court found that the Loan Agreement is ambiguous as to whether AlSayer is personally liable, or whether it directly binds Tags Lab alone.  It did not resolve the issue at trial. *See AlSayer*, 2025 WL 100899, at \*14.  Because AlSayer is separately and personally bound by the Surety Document, we similarly need not resolve the issue on appeal.

[5]      Notably, the record evidence establishes Tags Lab is a shell company with no assets. *See* J. App'x at 282, 293, 317.

is bound to pay, [and] the debt is [its] own and not within the statute." *Martin Roofing v. Goldstein*, 60 N.Y.2d 262, 264 (1983).

But there is an even more fundamental flaw with OmniX's argument under § 5-701(a). Even if the implied agreement were construed as OmniX prefers, it would still not be an agreement "to answer for the debt . . . of another person" under New York law. N.Y. Gen. Oblig. L. § 5-701(a)(2). Instead, "the statute applies to circumstances in which the promisor has acted as surety of another." *Martin Roofing*, 60 N.Y.2d at 264 (citing Restatement, Contracts 2d, § 112). In other words, the statute only applies where "the promisee is an obligee of the other's duty." Restatement, Contracts 2d, § 112; *see also Steinberger v. Steinberger*, 676 N.Y.S.2d 210, 211 (2d Dep't 1998) ("Since the promise . . . was made to the third-party plaintiff *rather than to the creditor bank*, it was not a promise to answer for the debt of another within the meaning of the Statute of Frauds." (emphasis added)). In order for the implied agreement to fall within § 5-701(a)(2), therefore, OmniX would have needed to promise *KNF* (the obligee) that it would pay the debt under the Loan Agreement, not AlSayer.

## III.    <u>Indemnification</u>

AlSayer's argument that the District Court wrongly dismissed her indemnification claim fares no better. AlSayer relies on 8 Del. C. §§ 143 and 145, along with the OmniX bylaws, but they do not support her claim.

First, AlSayer conflates OmniX's *power* to guarantee a loan for an officer with an

*obligation* to indemnify that officer in enforcing such a guaranty. 8 Del. C. § 143 merely establishes that corporations may provide loans or guarantee a loan obligation of an officer or employee "whenever, in the judgment of the directors, such loan, guaranty or assistance may reasonably be expected to benefit the corporation." *Id.* OmniX incorporated such powers into its bylaws. *See* J. App'x at 1450. But these provisions say nothing about an affirmative obligation on the corporation to indemnify AlSayer for her efforts to enforce the implied agreement.

Likewise, AlSayer conflates OmniX's obligations under the implied agreement to cover a debt she holds in her personal capacity with its separate obligation to indemnify officers. The next provision she highlights, 8 Del. C. § 145, at least pertains to indemnification; it states that a corporation may "indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action . . . by reason of the fact that the person is or was a director, officer, employee or agent of the corporation." *Id.*[6] And again, the OmniX bylaws incorporate this power. *See* J. App'x at 1446. But AlSayer was not made a party to any threatened litigation by KNF (to the extent it exists) "by reason of the fact that" she was an officer of OmniX; her obligations

---

[6]     AlSayer seeks indemnification to cover "fees and expenses she has incurred in connection with the KNF loan." AlSayer Br. at 40. But the indemnification provisions she cites merely cover "threatened, pending or completed action[s]" and the fees "reasonably incurred by the person in connection with the defense or settlement of such action or suit." 8 Del. C. § 145; J. App'x at 1446 (incorporating Delaware Law). As such, indemnification does not provide an avenue for covering all fees and expenses incurred in simply maintaining the KNF loan. We construe her argument to instead seek indemnification in relation to a "threatened" action by KNF.

7

to repay the KNF loan arise from commitments made outside her capacity as CEO of OmniX. *See generally Paolino v. Mace Sec. Intern., Inc.*, 985 A.2d 392, 406 (Del. Ch. 2009) (requiring a "nexus or causal connection" with "one's official capacity" and suggesting the relevant inquiry is whether "corporate powers were used or necessary" (citations omitted)). Reinforcing this fundamental flaw in AlSayer's argument, the OmniX bylaws expressly provide that OmniX "will not be required to indemnify any director or executive officer in connection with any proceeding . . . *initiated* by such person" absent inapplicable exceptions. J. App'x at 1446 (emphasis added).[7] Thus, AlSayer is not entitled to indemnification.

## IV.    Conclusion

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[7]    One such exception to the "initiation" rule under the OmniX bylaws occurs where "such indemnification is required to be made under paragraph (d) of this Section." J. App'x at 1446. Paragraph (d), in turn, provides that an officer initiating an action may be indemnified where that action was brought to enforce the officer's indemnification rights under the bylaws against the indemnifying corporation and the action was successful. *See id*. at 1447 ("The claimant in such enforcement action, if successful in whole or in part, will be entitled to be paid also the expense of prosecuting the claim."). But a provision assigning an obligation on OmniX to pay expenses *after* indemnification rights have been recognized is irrelevant to determining whether AlSayer has indemnification rights *in the first place*. Therefore, paragraph (d) does not entitle AlSayer to indemnification of fees related to the present proceedings.

8